JENNIFER C. PIZER (SBN 152327)
jpizer@lambdalegal.org
PELECANOS*
pelecanos@lambdalegal.org
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
800 South Figueroa Street, Suite 1260
Los Angeles, California 90017-2521
Telephone: (213) 382-7600

JOSE ABRIGO*
jabrigo@lambdalegal.org
OMAR GONZALEZ-PAGAN*
ogonzalez-pagan@lambdalegal.org
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005-3919
Telephone: (212) 809-8585

CAMILLA B. TAYLOR*
ctaylor@lambdalegal.org
KENNETH D. UPTON, JR*
kupton@lambdalegal.org
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3656 North Halsted Street
Chicago, Illinois 60613-5974
Telephone: (312) 663-4413

KAREN L. LOEWY*
kloewy@lambdalegal.org
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
815 16th Street NW, Suite 4140
Washington, DC 20006-4101
Telephone: (202) 804-6245

*Appearance Pro Hac Vice

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| SAN FRANCISCO AIDS FOUNDATION, et al.;<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.<br><br>*Defendants*. | Case No. 4:25-cv-1824-JTS<br><br>**DECLARATION OF MICHAEL MUNSON, EXECUTIVE DIRECTOR OF FORGE, IN SUPPORT OF PLAINTIFF'S COMPLAINT AND MOTION FOR PRELIMINARY INJUNCTION** |

I, Michael Munson, hereby state as follows:

1. I am the co-founder and Executive Director of FORGE Inc. ("FORGE"), a nonprofit 501(c)(3) organization based in Milwaukee, Wisconsin, which provides training and support to service providers who serve victims of crime, as well as provides direct support and resources to transgender and nonbinary survivors of violence. I have served in this capacity since 1994.

2. I submit this Declaration in support of Plaintiffs' Complaint and Motion for a Preliminary Injunction, which seeks to prevent Defendant agencies and their leadership from enforcing Executive Order No. 14168 "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" ("Gender Order"), issued January 20, 2025; Executive Order No. 14151 "Ending Radical and Wasteful DEI Programs and Preferencing" ("DEI-1 Order"), issued January 20, 2025; and Executive Order No. 14173 "Ending Illegal Discrimination and Restoring Merit-Based Opportunity" ("DEI-2 Order"), issued January 21, 2025 (collectively, the "Executive Orders"), and related agency directives that seek to enforce illegal, *ultra vires* Presidential action.

3. FORGE was founded in 1994 and offers programs and services to reduce the impact of trauma on transgender and nonbinary survivors of violence by empowering service providers, advocating for systems reform, and connecting survivors to healing possibilities. Most of this work focuses on training service providers who work with victims of sexual assault, intimate partner violence, stalking, and hate crimes to increase their knowledge of how to better serve transgender/nonbinary victims of crime. FORGE also provides direct support, resources, and healing services to transgender community members.

4. Acknowledging transgender people's existence, respecting them, and advancing their civil rights is central to FORGE's identity, advocacy, and mission, and is a necessary part of every

1
DECLARATION OF MICHAEL MUNSON IN SUPPORT OF PLAINTIFFS' COMPLAINT
AND MOTION FOR PRELIMINARY INJUNCTION, CASE NO. 4:25-cv-1824-JTS

aspect of the services we provide. Indeed, every aspect of the services provided by FORGE directly or indirectly impacts the transgender community.

5. Additionally, FORGE's approach is deeply informed by intersectionality, recognizing that the experiences of transgender and nonbinary people are further impacted by other marginalized identities they may have, such as race, ethnicity, and disability, which necessitates a nuanced and comprehensive approach in all our programs and services. Simply put, all of our trainings incorporate DEI and DEIA principles because not only are transgender people an underserved, marginalized group, but transgender people of color, transgender people living with disabilities, and transgender youth face even greater levels of victimization and marginalization, especially Black transgender women and transgender youth of color. Recognizing those intersections is necessary to ensure that the service providers we train are able to work effectively with the wide range of individuals within the transgender community.

6. Although FORGE only has four employees, in 2024 alone, we facilitated over eighty trainings, events, podcasts, and listening sessions for service providers. These trainings and support events were attended by over four thousand individuals, reaching people from 43 states and 3 territories. Throughout the year, we facilitated another eighteen events specifically for transgender and nonbinary survivors and community members. In addition to the trainings, events, and media that FORGE produced last year, we also created transgender-specific documents, such as academic articles, textbook chapters, technical guidance, and toolkits. Over the longer course of our work, we have also conducted trainings and prepared written content for government agencies, like the Department of Justice (DOJ), Federal Bureau of Investigation, and the Department of Veterans Affairs.

7. FORGE is a federal grantee and subgrantee. Approximately 90% of FORGE's revenue arises from federal programs and grants, including but not limited to grants from the DOJ Offices for Victims of Crime (OVC), Justice Programs (OJP), and Violence Against Women (OVW) and National Institute of Justice (NIJ), the Substance Abuse and Mental Health Services Administration (SAMHSA), and the National Institutes of Health National Institute on Alcohol Abuse and Alcoholism (NIH-NIAAA). FORGE's existing federally funded grants support various initiatives, including the development of training materials and direct support services for transgender and nonbinary survivors. These Federal offices and governmental departments have made explicit in the requests for proposals that organizations should, and in some cases must, focus on target populations, including transgender people and people of color.

8. For example, FORGE was the original author of the 2014 OVC Guide, *Responding to Transgender Victims of Sexual Assault,* an extensive online toolkit for service providers hosted on the OVC website, funded by OVC. In 2022, FORGE applied for and received a grant from OVC to create an updated version of this vital resource. The new toolkit expands beyond the singular crime of sexual assault to address a wide range of crimes against transgender people and will focus content for several dozen types of service providers. The grant solicitation explicitly outlined that the toolkit must address the barriers and disparities experienced by transgender women and girls of color and address the diverse identities and experiences within the transgender community that are uniquely negatively impacted, underserved, and inadequately cared for by service providers. This is an important aspect of the toolkit because each group and subpopulation within the transgender community experiences different types and severity of violence and different barriers to receiving services. Although the original toolkit was on the OVC website for over a decade, after the Executive Orders issued, OVC removed it from their site. Because of the Executive

3

Orders, I am uncertain about whether the updated version OVC has funded us to produce will ever be made public or whether we will be able to drawdown the funds to cover the expenses we have incurred in the last month for its production. Although I have not heard directly from OVC, I did hear from the National Violence Against Women Law Enforcement Training and Technical Assistance Consortium, who was supposed to provide a section of the toolkit for law enforcement professionals, that their funder, OVW, asked them to pause their support for the toolkit because of the Executive Orders.

9. Likewise, FORGE partners with numerous national mainstream organizations that also provide training and technical assistance to victim service providers under their grant-funded work. Partnerships, working groups, advisory teams, and other forms of collaboration are central to carrying out our training and technical assistance work. FORGE's specific role in these partnerships is to bring a focus on the needs and realities of transgender survivors of violence to their broader efforts.

10. Currently, FORGE is working on an OVW grant-funded project with the International Association of Forensic Nurses (IAFN) on the National Tribal Clearinghouse on Sexual Assault. FORGE's work on this project focuses on survivor services and outreach initiatives for Two-Spirit people. Two-Spirit people are Native people whose gender and sexuality do not fit into the Western colonial paradigms of the gender binary articulated in the Executive Orders. Since the Executive Orders issued, we participated in a working group with IAFN and other partners related to the joint resources we are creating under this grant. Members of the working group shared that their program managers from OVW and OVC had instructed that our grant funded work could not include terms like "equal opportunity," "pronoun," "colonialism," "Westernization" "intersectionality," "genocide," "accessibility," and "historical trauma." Restricting the use of

these words not only results in inadequate contextual understanding but also fails to address the systemic issues at the core of historic harms faced by Native people, including Two-Spirit people. These restrictions on FORGE's discussions of gender and DEI completely undermine our ability to carry out grant-funded work. More critically, IAFN reported to FORGE during a meeting that the program manager for this grant at OVW told them that the work with Two-Spirit people under the grant had to stop because of the Executive Orders, which they confirmed by email to me on February 4, 2025. A true and accurate copy of that email is attached hereto as Exhibit 1.

      11. FORGE has heard from other primary grantees about similar restrictions on work we carry out as a subgrantee or contractor, including on OVW-funded webinar content focusing on transgender youth survivors of dating violence; webinar content on culturally responsive support for LGBTQ youth of color; podcast content focusing on sexual assault and the dynamics of LGBTQ people on faith-based college campuses; and continued participant engagement on NIH-NIAAA funded research related to transgender people, intimate partner violence and the role of alcohol. We are uncertain about how exactly this work is going to be constrained and what will be allowed. None of the restrictions we are hearing about have been put in writing by the funding agencies, making it challenging to keep track of the changing environment. I have spent so much time talking with my staff, with our partners, and with leaders of other organizations working in the sexual assault and domestic violence spaces trying to make sense of what these Executive Orders allow and prohibit. We are trying to strategize around how to fund the work with both providers and survivors if our federal funding is cut off. The heavy focus in the last few weeks has been specifically on transgender youth survivors and ensuring they continue to have access to post-assault emergency care. We are all committed to this vital work and to navigating these Executive

Orders' attempts to erase the identities of both our organizations and the people we are trying to help.

12. FORGE's collaborations with other organizations have also been disrupted because of partners' grant funding. FORGE has been part of a workgroup for a project funded by the National Institute of Corrections on improving care of transgender people in correctional settings. On February 11, 2025, we were informed by the grantee that work on this project has been paused because of the Executive Orders. Though we were not paid for participating in this workgroup, FORGE is nonetheless impacted by its termination because we lose access to partners that may be best positioned to make major policy changes. Removing FORGE from the conversation results in policy changes that insufficiently consider the needs and realities of transgender survivors of violence and ultimately makes our work harder in the long run because we must fill the gaps in the policies that are enacted.

13. Without grants from these federal programs, FORGE would not be able to develop and provide trainings geared towards providers serving transgender and nonbinary survivors of violence. The lack of such training material would leave transgender survivors without access to professionals with the knowledge, skills, and cultural competency to provide the support and services that all survivors of violence need and deserve. Without recognizing the unique experiences of transgender people across different lines of race, age, and ability, transgender survivors experience additional harm from service organizations and increased systemic victimization. All of FORGE's grant-funded work focuses on transgender survivors and the professionals who provide services to transgender survivors. All grant activities outlined in approved and funded proposals are centered on transgender and nonbinary people who are victims of crime. The barriers to transgender survivors reporting this violence and seeking support are

tremendous. These barriers increase when professionals are not trained and do not have the skills to meet survivors' needs in ways that are affirming and respectful of every aspect of their identities.

14. Without addressing topics such as implicit bias and grappling with how racism, sexism, and ablism intersect with transphobia, FORGE cannot successfully fulfill the obligations of our federal funding. Failing to train the professionals working with transgender survivors of violence on the impacts of systemic inequalities and barriers related to race, age, disability, lack of language access, and economic status would mean that those professionals will not be able to effectively serve those survivors.

15. Some of the recent content created by FORGE is listed below:

    a. In partnership with End Violence Against Women International (EVAWI), FORGE created a new training module in EVAWI's OVW-funded "Sexual Assault Medical Forensic Exam: A Virtual Practicum." This module includes an immersive training case example focused on a black trans man who experienced sexual assault and his interactions with a sexual assault nurse examiner and victim advocate. The module's components included a video of the case/scenario, a director's cut, voice-over additional training notation, resources, and links to additional trans-specific learning opportunities for sexual assault nurse examiners.

    b. In January 2024, FORGE developed and presented a training requested by OVC, for the DOJ PREA (Prison Rape Elimination Act) Workgroup, titled "Working with Trans and Nonbinary People in Detention."

    c. In September 2024, FORGE was asked by DOJ/OJP to present at the 2024 Hate Crimes Grantee Conference in Birmingham, Alabama, hosted by the

DOJ. FORGE presented on a keynote panel (titled "Building Community Resilience Against Hate") and a workshop (titled "Developing Actionable Community Response Plans"). The content included in these sessions was on hate violence committed against transgender people, addressing the implications of race, national origin, and religion, and how communities respond to that violence.

All of this content was prepared using federal grants.

16. FORGE has already suspended several proposals for federal grants that were in progress because of the Executive Orders. These include the OVW FY25 Research and Evaluation Initiative and the NIJ FY25 Research and Evaluation on Hate Crimes, both of which FORGE outlined responses to and drafted content ready for submission. Additionally, FORGE was exploring proposals for the OVW FY25 Training and Services to End Abuse in Later Life and the NIJ FY25 Research on the Abuse, Neglect, and Financial Exploitation of Older Adults. Two days before the DEI Executive Order was signed, FORGE submitted a proposal to the Culturally Responsive Victim Services Grant Program, which is funded by the OVC FY 2021 National Center for Culturally Responsive Victim Services.

17. As an organization, we do not want to waste any more time applying for grants that we will never be awarded in light of the Gender and DEI Executive Orders. We are extremely pessimistic that we will be awarded the one OVC grant we did apply for, the award date for which is March 10, 2025. At the same time, these are the types of grants we have previously been awarded and depend on as an organization. Even though we did not know if we would receive these particular grants, the suspension of these proposals signifies the insecurity of our funding for critical initiatives aimed at supporting transgender and nonbinary victims of crime and violence.

But more than that, it is extremely concerning that whoever does receive the grants we are now excluded from because of the Executive Orders will also be unable to mention transgender and nonbinary people or racial disparities.

18. It is beyond dispute that transgender and nonbinary people historically and currently experience disproportionately high rates of victimization and have faced significant barriers to accessing services for survivors of violence. FORGE's work squarely relates to decreasing those barriers by increasing service providers' culturally specific knowledge, skills, and trust, thereby reducing revictimizing and retraumatizing. The transgender and nonbinary people we serve are acutely aware of the Executive Orders and the possible implications on their safety and ability to receive services. Here are two concrete examples: First, FORGE recently announced a three-part series on emotional regulation for trans survivors and noticed that participants only registered with their first names. For nearly thirty years, registration for events has never resulted in such massive non-disclosure of attendees' full names. Since the Executive Orders were issued, FORGE has received requests from 988/hotlines for training specific to transgender people in crisis following the release of the Executive Order; contacts by family members concerned about their trans loved ones safety and request for guidance on how to support them; transgender people reached out in a panicked state asking for support on how they can update their identity documents and asking what harm could be done if they apply for name or gender changes; and media outlets requested interviews or statements specifically about the Executive Order.

19. We are uncertain about how to conduct our work since every aspect of our programming and services revolve around transgender and nonbinary survivors and the providers who serve them. We cannot remove references to transgender and nonbinary people from our work, because our work focuses on transgender victims of crime. We are deeply concerned that the

9

DECLARATION OF MICHAEL MUNSON IN SUPPORT OF PLAINTIFFS' COMPLAINT
AND MOTION FOR PRELIMINARY INJUNCTION, CASE NO. 4:25-cv-1824-JTS

trainings and services we provide—all focused on transgender content—will be used as a justification for suspending or terminating FORGE's federal funding from grants and contracts. It is an impossible position with no way forward. If trainers are required to censor discussions about implicit bias, the importance of diversity, equity, and inclusion, and issues affecting the transgender community, which are often central to the purpose of a particular training, then they are adding to the trauma of survivors, not mitigating it. Such censorship can defeat the purpose of the training and leave the service providers without the tools necessary to ensure nondiscriminatory services to vulnerable communities. And as a practical matter, the Executive Orders restrict FORGE's ability to advertise such trainings and limit the organizations that can participate because of risks to their own grant funding, which naturally results in fewer individuals attending the trainings and undermines FORGE's ability to meet its obligations under federal grant funding.

20. The Executive Orders interfere with FORGE's ability to train service providers on basic cultural competency and service provision to transgender and nonbinary survivors of violence. The Executive Orders also directly interfere with our ability to provide support directly to transgender and nonbinary survivors. FORGE plainly cannot accomplish our mission—and our mandates under existing grants—should the Executive Orders be allowed to stand. The Executive Orders threaten FORGE's grant funding, the loss of which would result in FORGE having to end its current operations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 24, 2025

Respectfully submitted,

*/s/ Michael Munson*
Michael Munson

---

11
DECLARATION OF MICHAEL MUNSON IN SUPPORT OF PLAINTIFFS' COMPLAINT
AND MOTION FOR PRELIMINARY INJUNCTION, CASE NO. 4:25-cv-1824-JTS

# EXHIBIT 1

**michael munson**

| | |
|---|---|
| From: | [redacted]@forensicnurses.org> |
| Sent: | Tuesday, February 4, 2025 4:23 PM |
| To: | michael munson |
| Cc: | [redacted] |
| Subject: | Re: Still on track to continue? |

Hi Michael,

Thanks for being able to meet today. I know that I shared the update with you during our meeting, but I also wanted to provide it to you in writing so that you have it for your records, should you need it at any point. After meeting with our OVW grant manager for the NTCSA project, we have been directed to pause all work on the LGBTQ2S Outreach Project until they are able to provide us with some guidance and direction over how to move forward with our work. I have sent an email update to [redacted] and [redacted], as these were the two individuals who IAFN had moved forward with connecting with as potential collaborative partners for the Outreach Plan. Once I hear something different from OVW we will let you know. I can only imagine who this is impacting FORGE, I am sorry that we are even at a place in time where we are having to have these conversations.

Hang in there Michael, talk to you soon,

[redacted]
*Forensic Nursing Director*
*She, Her, Hers*
**INTERNATIONAL ASSOCIATION OF**
**Forensic Nurses**
*Research. Educate. Lead.*
www.forensicnurses.org
[redacted]@forensicnurses.org
Phone: 410-626-7805 ext 104 | Fax: 410-626-7804
Working in US Eastern Standard Time Zone

IAFN Technical Assistance: 1-877-819-7278
IAFN Technical Assistance: safeta@forensicnurses.org

National Tribal Clearinghouse on Sexual Assault
Helpline: 1-800-999-5444