# EXHIBIT D

A25-0025-S001

# ILLINOIS INSTITUTE OF TECHNOLOGY

## COST REIMBURSEMENT RESEARCH SUBAWARD AGREEMENT
## NUMBER A25-0025-S001

| Pass-through Entity ("University"): | | | "Subrecipient": | | |
|---|---|---|---|---|---|
| Illinois Institute of Technology | | | Los Angeles LGBT Center | | |
| Address: | | | Address: | | |
| 10 West 35th Street Chicago, IL 60616-3717 | | | 1118 N. McCadden Place Los Angeles, CA 90038-1213 | | |
| University Principal Investigator: | | | Subrecipient Principal Investigator: | | |
| Arryn Guy | | | Risa Flynn | | |
| Federal Award No. ("Prime Award"): | | FAIN: | | Federal Awarding Agency ("Sponsor"): | |
| 4R00DA055508-03 | | R00DA055508 | | National Institutes of Health | |
| Federal Award Issue Date: | Total Amount of Federal Award to University | CFDA No.: | | CFDA Title: | |
| 07/19/2024 | $ 249,000 | 93.279 | | Drug Abuse and Addiction Research Programs | |
| Project Title: | A Gender-Affirming Stigma Intervention to Improve Substance Misuse and HIV Risk among Transgender Adults | | | | |
| Subaward Period of Performance ("Term"): | | | | Amount Funded This Action: | Cost Share This Action |
| Start: | 08/01/2024 | End ("Expiration Date"): | 07/31/2025 | $12,536 | $0 |
| Estimated Project Period (if incrementally funded): | | | | Total: | Cost Share |
| Start: | | End: | | $ | $ |
| Is this Award R&D: | ☒ Yes | ☐ No | | | |

This cost reimbursable subaward (the "Agreement") is made this 13th day of September 2024 between **Illinois Institute of Technology** (the "University") and Los Angeles LGBT Center (the "Subrecipient"). "Party" shall mean either University or Subrecipient, as the case may be, and "Parties" shall refer to University and the Subrecipient.

By this Agreement, University desires to have the Subrecipient conduct a portion of the work under the Prime Award, as described above. The terms and provisions of the Prime Award are set forth in Attachment A hereto and which by this reference are hereby incorporated into this Agreement.

Now, therefore, in consideration of the mutual promises and other good and valuable consideration exchanged in this Agreement, the receipt and sufficiency of which are hereby acknowledged, University and the Subrecipient agree as follows:

ARTICLE 1.  STATEMENT OF WORK

By this Agreement, University retains the Subrecipient to furnish all personnel, materials, equipment, and facilities necessary to perform the Statement of Work described in the Subrecipient's proposal to

University (the "Project"), the terms and provisions of which are set forth in <u>Attachment B</u> hereto and which are hereby incorporated into this Agreement. The designated technical representative of University, or representatives of Sponsor, shall have the right to inspect and review the progress of the Project during normal business hours or at such other times as work on the Project is being conducted.

**ARTICLE 2.  PERIOD OF PERFORMANCE**

The Term, as described above, may be altered or extended to a date certain only by the mutual written agreement of the Parties.  This Agreement may be terminated before the Expiration Date as provided for in Article 14 hereof.

**ARTICLE 3.  REPORT OF WORK**

The Subrecipient agrees to provide all progress reports and a final report as the same are called for in <u>Attachment B</u>.  All such reports shall conform to the requirements of the Prime Award.  In addition, the Subrecipient agrees to reasonably cooperate with the University's technical representative, as identified in <u>Attachment D</u>, to the extent necessary to enable University to prepare any and all progress reports and the final report required of University under the terms of the Prime Award.

**ARTICLE 4.  ESTIMATED COST**

Subject to the terms and provisions of this Article 4 and Article 12, University will pay the Subrecipient a sum not to exceed the **Amount Funded by this Action**, as described above.  Funds are to be used as detailed in the Subrecipient's budget as the same was submitted to University, which budget is set forth as <u>Attachment C</u> hereto and by this reference is incorporated into this Agreement.  Funds must be expended during the Term outlined in Article 2, and in all cases, before the Expiration Date. **[Include the following sentence only if cost share is applicable)** In addition, the SUBRECIPIENT shall provide the sum, **Cost Share This Action,** related to this Project as detailed in <u>Attachment C</u>.]

The allowability of costs will be determined according to the Subrecipient's methods of determining costs, provided such methods comply with the current policies of the Sponsor and any restrictions unique to the Prime Award.  Where a grantee is normally required by these current policies to seek prior approval for budgetary actions from the Sponsor, the Subrecipient shall direct its requests to the Administrative Representative of University.

**ARTICLE 5.  INTELLECTUAL PROPERTY**

"Intellectual Property" means all intellectual property, including patents, inventions (whether or not the subject of patents or patent applications), copyrights, software, technical data, records and know-how (whether or not protected as a trade secret).  All Intellectual Property of University or the Subrecipient in existence prior to the execution of this Agreement (the "Existing Intellectual Property") shall remain the exclusive property of each.

    A.  <u>Inventions.</u> All inventions, other than Existing Intellectual Property, first generated by the Subrecipient in the performance of this Agreement (the "Generated Inventions") will be subject to and handled in accordance with 37 C.F.R. §401 "Rights to Inventions Made by Nonprofit Organizations and Small Business Firms" and in accordance with the terms and conditions of the Prime Award. In accordance with 37 CFR 401.14, Subrecipient agrees to notify the University's Administrative Representative identified in <u>Attachment D</u> within thirty (30) days after

A25-0025-S001

Subrecipient's inventor discloses, in writing, any invention conceived or first actually reduced to practice in the performance of this Agreement to Subrecipient's personnel responsible for patent matters. Subrecipient shall submit a final invention report using Sponsor's specific forms to University's Administrative Representative identified in <u>Attachment D</u> within sixty (60) days of the Expiration Date so that it may be included with University's final invention report to the Sponsor. A negative report is required.

B. <u>Copyrights.</u>  Subrecipient hereby grants to University and Sponsor an irrevocable, royalty-free, nontransferable, non-exclusive right and license to use, reproduce, make derivative works, display, and perform publicly any copyrights or copyrighted material (including any computer software and its documentation and/or databases) first developed and delivered under this Agreement solely for the purpose of and only to the extent required to meet University's obligations to Sponsor under its Prime Award.

C. <u>Data Rights.</u>  Subrecipient grants to the University and Sponsor the right to use data created in the performance of this Agreement solely for the purpose of and only to the extent required to meet University's obligations to Sponsor under its Prime Award.

**ARTICLE 6.  <u>PUBLICATIONS</u>**

Any publication resulting from work performed under this Agreement shall acknowledge the support of the Sponsor and the University.

**ARTICLE 7.  <u>AUTHORIZED REPRESENTATIVES</u>**

Any notice given under this Agreement shall be in writing, shall reference this Agreement and shall be deemed given when: (a) delivered personally; (b) sent by confirmed e-mail or facsimile; (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (d) after deposit with a commercial overnight carrier, with written verification of receipt.  Notwithstanding the foregoing, any notice given pursuant to Article 14 must be given by (c) or (d).  All communications will be sent to the addresses and persons set forth in <u>Attachment D</u>.

**ARTICLE 8.  <u>CONFIDENTIAL INFORMATION</u>**

Confidential information ("Confidential Information") shall include (i) any proprietary information that is disclosed in an tangible format and marked or labeled by the Subrecipient or University as confidential, and (ii) any proprietary information that is disclosed orally, visually or in a non-tangible format that is identified by the Subrecipient or University at the time of the disclosures as being confidential and which is then confirmed in writing as being Confidential Information within twenty (20) days after the initial disclosure. Confidential Information shall exclude the following:

(a) information that is or which becomes publicly known through no fault of the receiving Party;
(b) information known to the receiving Party prior to receipt from the disclosing Party, as evidenced by the receiving Party's written records;
(c) information that is disclosed to the receiving Party in good faith by a third party who has an independent right to such information;
(d) information that is independently developed by the receiving Party, as evidenced by written records of the receiving Party; or
(e) information approved for disclosure by the prior written consent of the disclosing Party.

A25-0025-S001

A Party may disclose Confidential Information pursuant to subpoena, judicial action or national, state or local governmental regulations or requirements, provided that the Party so disclosing notifies the other Party of the need for such disclosure within a reasonable time given the circumstances so that such other Party, at its sole cost and expense, may, as it deems appropriate, seek to challenge the required disclosure or seek a protective order.

A Party receiving Confidential Information shall only use it for the purpose of performing its obligations under this Agreement and agrees that such Confidential Information shall remain the property of the disclosing Party. Upon termination of this Agreement, the Parties shall surrender any Confidential Information transmitted to them by the other or certify that such information has been destroyed, except that one copy may be retained in a secure location for the sole purpose of identifying and monitoring its obligations under this Agreement. The Parties' obligations of confidentiality set forth herein shall survive for a period of three (3) years from the date of disclosure.

**ARTICLE 9.  INDEMNIFICATION**

Each Party (for purposes of this Article 9, the "Indemnifying Party") shall indemnify, defend and hold harmless the other Party (for purposes of this Article 9, the "Indemnified Party"), its trustees, directors, officers, employees and agents from any and all claims, damages, liabilities, losses and expenses (including, without limitation, reasonable attorneys' fees) incurred by the Indemnified Party or its trustees, directors, officers, employees and agents to the extent that such claims, damages, liabilities, losses and expenses arise from or relate to the Indemnifying Party's negligence, whether by act or omission, and/or from its breach of a provision of this Agreement.  Further, each Party agrees to be responsible to pay for any damage or destruction which it causes to the other Party's property or equipment, excluding normal wear and tear.  Notwithstanding any other provision of this Article 9, each Party agrees to waive any claims against the other for special, consequential, indirect, punitive and exemplary damages as well as economic loss or business disruption.

**ARTICLE 10.  INSURANCE**

At its sole cost and at all times during the Term of this Agreement, Subrecipient shall procure and maintain in full force and effect the following insurance: (a) commercial general liability insurance with limits not less than $2,000,000 combined single limit for any one occurrence covering personal injury, sickness or death or for damage to or destruction of property that may arise from, relate to or result from its performance under this Agreement; (b) property insurance insuring the full replacement cost of all equipment, real and/or personal property, if any, that is owned by the University or the Sponsor but is under the control of the Subrecipient for purposes of fulfilling its obligations under this Agreement; (c) worker's compensation insurance in an amount not less than the required statutory limits and including employer's liability insurance with limits of not less than $500,000 per occurrence; and (d) such other forms of insurance as the Prime Award requires.  The form of all such policies and deductibles thereunder shall be issued by insurers with an A.M. Best rating of "A- VIII". In addition, the policy required under (a) above shall be primary and not contributory, shall contain a waiver of any rights of subrogation thereunder, shall name Illinois Institute of Technology and the Sponsor as additional insureds and shall require at least thirty (30) days' prior written notice to University of termination or material modification. Upon execution of this Agreement and within ten (10) days before the expiration of each such policy, the Subrecipient shall deliver to University certificates evidencing the foregoing insurance or renewal thereof, as the case may be.

A25-0025-S001

**ARTICLE 11.  EXPORT CONTROL**

The Subrecipient acknowledges that the University is an accredited institution of higher education which engages in research that generally qualifies for the "fundamental research" exclusion and other exclusions or exceptions under the export control laws and regulations of the United States, including the Export Administration Regulations and the International Traffic in Arms Regulations, as amended (collectively, the "Export Laws").  The Parties also acknowledges that the disclosure and/or export or re-export, deemed or actual, of, certain information of a scientific or technical nature, including any improvements, additions or modifications thereto, laboratory prototypes, materials and other commodities (collectively, "Controlled Commodities") may be subject to the Export Laws, and, if so subject, could preclude or delay a Party's ability to fulfill its obligations hereunder.  Accordingly, the Subrecipient and University agree that all actions that they respectively take under this Agreement shall be in compliance with such Export Laws and to be individually responsible therefor.  To this end, neither the Subrecipient nor University will transfer or disclose any Controlled Commodities to the other Party without first notifying said Party that such transfer or disclosure is to occur and obtaining from the other Party its written consent to accept the same as well as any specific instructions pursuant to which such Controlled Commodities should be transferred or disclosed.

**ARTICLE 12.  PAYMENT**

Payment will be made within sixty (60) days on receipt of monthly invoices itemized according to the budget detail shown in Attachment C and shall include the Sponsor's share and the Subrecipient's cost-share, if applicable. Using an invoice substantially similar to that attached hereto as Attachment E, the Subrecipient shall submit invoices, not more frequently than monthly, for costs incurred to date that have not previously been invoiced.  Each invoice must (i) show the amounts expended in the current period and cumulatively to date by line item budget categories along with a reconciliation of the total amount of this Agreement with amounts expended to date and reimbursement received; (ii) include the Subrecipient's certification, with authorized official's signature, that costs are appropriate and accurate and that payment has not yet been received, (iii) be supported by a general ledger report originating directly from the Subrecipient's financial record keeping system; and (iv) any other information required by this Agreement or the Prime Award. University may request supporting documentation in certain categories prior to or subsequent to approving the invoice.  Supporting documentation includes, but is not limited to, travel receipts, purchase orders, invoices for services or supplies, or time records. All supporting documentation shall be retained and provided by Subrecipient to University upon request in accordance with Article 13 (Audit). A final invoice, marked "FINAL", shall be submitted by the Subrecipient to University's Financial Contact NOT LATER THAN sixty (60) days after the Expiration Date.  The final invoice shall constitute the Subrecipient's final financial report.  University will review the Subrecipient's costs to confirm that they comply with the Subrecipient's budget, and reserves the right to reject an invoice.

> Illinois Institute of Technology
> Attention:  Grant and Contract Accounting
> subcontractinvoicing@iit.edu
> Phone:  (312) 567-3330

**ARTICLE 13.  AUDIT**

A25-0025-S001

All costs incurred in the performance of this Agreement will be subject to audit, as required by the terms and conditions of the Prime Award.  The Subrecipient agrees (i) to prepare and forward to University any audit required by the Prime Award and (ii) to comply with any Audit conducted by or made at the direction of the Sponsor.  The Subrecipient acknowledges that any such audit will have to satisfy the requirements of and be in full compliance with 2 CFR 200 (the "Uniform Guidance").  Subrecipient certifies by signing this Agreement that it complies with the Uniform Guidance, will provide notice of the completion of required audits and any adverse findings which impact this subaward as required by parts 200.501-200.521, and will provide access to records as required by parts 200.336, 200.337, and 200.201 as applicable.  Unless the Prime Award provides otherwise, financial records, supporting documents, statistical records, and all other records pertinent to an award shall be retained for a period of three (3) years from the date of submission of the final expenditure report or, for awards that are renewed quarterly or annually, from the date of the submission of the quarterly or annual financial report, as authorized by the Sponsor.  Subrecipient agrees to allow the relevant auditor access to all records necessary to support the reported costs.  Should such audit result in disallowances, University will determine whether or not the disallowances shall be accepted or appealed.  In the event that the disallowances are sustained, Subrecipient will return to University any funds which are disallowed and which have already been paid to the Subrecipient.  Nothing in this Article 13, however, shall prevent the Subrecipient from pursuing any and all administrative and judicial remedies that may be available to it.

**ARTICLE 14.  <u>EARLY TERMINATION</u>**

Subject only to the terms of the Prime Award, either Party may terminate this Agreement for convenience, at any time before the scheduled expiration of the Term, by giving the other Party not less than thirty (30) days advanced written notice.  Any such termination shall not be deemed a breach or default by the terminating Party and shall not give rise to any action for damages or other cause of action against the terminating Party.  Upon termination under this paragraph, (i) University shall reimburse, in accordance with the approved budget, the terms of the Prime Award and any and all rules and regulations of the Sponsor, the Subrecipient on a pro rata basis for all services performed and reimbursable in connection therewith incurred by the Subrecipient before said termination, and (ii) the Subrecipient shall furnish to University all reports of research completed, or in progress, though the date of termination, as the same are required by this Agreement, the Prime Award and/or any rules and regulations of the Sponsor.

In addition, either Party may terminate this Agreement upon the other's default of this Agreement.  The occurrence of any of the following shall constitute a default: (i) a Party fails to perform any other provision of this Agreement and such failure is not cured within thirty (30) days after written notice from the non-defaulting Party, or (ii) any voluntary or involuntary proceedings are filed by or against the Subrecipient under bankruptcy, insolvency or similar laws and, in case of any involuntary proceedings, are not dismissed within thirty (30) days after filing.

**ARTICLE 15.  <u>GENERAL PROVISIONS</u>**

A.  <u>Compliance With Laws</u>.  This Agreement shall be subject to and be performed in accordance with all applicable State and Federal laws, and the Parties agree at all times to comply therewith.  In particular, as the work to be performed under this Agreement is being supported by the Sponsor under the Prime Award to the University, this Agreement shall be subject to, as applicable, the rules, regulations, terms and conditions governing the Prime Award to the University, which are more fully set forth in <u>Attachment A</u>.  Further, to the extent that the Sponsor is the National Science Foundation and undergraduates, graduate students or post-doctoral researchers of the Subrecipient are to be

supported by funds received under this Agreement, Subrecipient represents that it will ensure that such individuals receive training sufficient to satisfy the requirements of Section 7009 of the America Competes Act, 42 U.S.C. §1862o-1.  In the event of any conflict between this Agreement and the rules, regulations, terms and conditions of the Prime Award, the rules, regulations, terms and conditions of the Prime Award shall take precedence and shall govern.

B.  <u>Financial Conflict of Interest</u>.  Subrecipient hereby certifies that it has an active and enforced conflict of interest policy ("FCOI") that is compliant with the provisions of 2 CFR 200.112 and any specific FCOI policy of the Sponsor, including 42 C.F.R. Part 50, Subpart F "Responsibility of Applicants for Promoting Objectivity in Research," if NIH is the Sponsor and to the extent said regulations are applicable to this Agreement, Subrecipient will apply and adhere to its own policy in the performance of its obligations under this Agreement.  Subrecipient also certifies that, to the best of its knowledge, all financial disclosures have been made related to the activities that may be funded by or through a resulting agreement, and that are required to be disclosed by applicable law or Subrecipient's FCOI. Notwithstanding anything herein to the contrary or in Subrecipient's FCOI to the contrary, Subrecipient agrees to notify University in writing no later than thirty (30) days following Subrecipient's identification of one of more of the following: (i) a financial conflict of interest as defined by any statute or regulation applicable to this Agreement or (ii) a violation of Subrecipient's FCOI.

C.  <u>Sub-Agreements</u>. Prior to the placement of sub-agreements under this Agreement, the Subrecipient shall provide a description of work to be performed under the sub-agreement and shall require prior approval from technical and administrative representatives of University, as the same are identified in <u>Attachment D</u>.

D.  <u>Additional Information</u>.  As a condition precedent to University performing any obligations hereunder, University must receive from Subrecipient its completed and accurate *Subrecipient Compliance Information Form*, a blank copy of which is attached hereto as <u>Attachment F</u>.

E.  <u>Governing Law</u>.  This Agreement and the legal relations of the Parties shall be governed by the laws of the State of Illinois without giving effect to choice of law principles.  Venue shall be in the state or federal courts of Illinois, whichever applicable, for any actions that may arise from this Agreement.

**[If the SUBRECIPIENT is a public college or university, use the following instead of the foregoing provision:]**  RESERVED.

F.  <u>Severability</u>.  The various terms, provisions and covenants herein contained shall be deemed to be separate and severable, and the invalidity or unenforceability of any of them shall in no manner affect or impair the validity or enforceability of the remainder hereof.

G.  <u>Waiver</u>.  If a Party fails to object to the other Party's default of any term under this Agreement, that failure shall not be considered a waiver by the non-defaulting Party of that term or subsequent default thereof, unless such waiver shall be in writing and signed by the non-defaulting Party.

H.  <u>Entire Agreement</u>.  This Agreement is the entire understanding between University and Subrecipient with respect to the subject matter hereto and merges any and all prior agreements, dealings, understandings and negotiations.  No modification, alteration or amendment of or to this Agreement shall be effective unless it is in a writing and signed by both Parties.

I.  Successors and Assigns.  Each provision of this Agreement shall bind, extend to and inure to the benefit of the Parties and their respective legal representatives, successors, and assigns. Unless the express written consent of the other Party and the Sponsor are first obtained, this Agreement shall not be assignable by either Party.

J.  Independent Contractor.  The Subrecipient is undertaking the performance of this Agreement as an independent contractor to University.  Nothing contained in this Agreement shall be deemed or construed by the Parties, or by any third party, to create the relationship of principal and agent, partnership, joint venture, or any association between the Parties.  The Subrecipient is solely responsible for the Subrecipient's employees, and University is solely responsible for University's employees.  The Subrecipient is not an agent of University and cannot bind University in any manner. It is understood that the Subrecipient shall bear sole responsibility for the proper and safe performance by its employees of all work and services performed hereunder.  The Subrecipient agrees and acknowledges that the Subrecipient is responsible for paying any and all federal, state, county and local taxes required of the Subrecipient.

K.  Authority To Sign.  The Parties represent that each individually has received all necessary approvals to enter into and execute this Agreement and that the person signing below on its behalf is authorized to bind his/her respective Party.

L.  Non-Debarment.  Subrecipient represents and warrants to University that, to the best of its knowledge and belief, neither the Subrecipient nor any of its officers, directors, owners, partners or persons having primary management or supervisory responsibilities within the business entity are: (i) presently debarred, suspended, proposed for debarment or declared ineligible for the award of contracts by any Federal agency; (ii) have, within the immediately preceding three-year period, been convicted of or had a civil judgment rendered against them for (a) commission of fraud or a criminal offense in connection with obtaining, attempting to obtain or performing a public (Federal, state, or local) contract or subcontract; (b) violation of Federal or state antitrust statutes relating to the submission of offers; or (c) commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion or receiving stolen property; and (iii) are presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses enumerated in foregoing (ii); and (d) has within a three-year period preceding the date of this Agreement, had one or more contracts terminated for default by any Federal agency.  The Subrecipient shall provide immediate written notice to University if the Subrecipient learns that its certifications hereunder were erroneous when made or has become erroneous by reason of changed circumstances.

M.  Lobbying.  Subrecipient represents and warrants to University that, (i) no federal appropriated funds have been paid or will be paid, by or on behalf of Subrecipient, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any federal contract, the making of any federal grant, the making of any federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any federal contract, grant, loan, or cooperative agreement, (ii) If any funds other than federal appropriated funds have been paid or will be paid to any person for influencing or intending to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the Subrecipient shall complete and submit Standard Form -LLL,

A25-0025-S001

"Disclosure Form to Report Lobbying," to University, and (iii) Subrecipient shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly. This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the day and year first set forth above.

ILLINOIS INSTITUTE OF TECHNOLOGY

By: *Lisa Machtemes*                          Date: 10/1/2024
　　Lisa Machtemes

Title: Director, Grant Award Negotiations and Acceptance, OSRP

SUBRECIPIENT

By: Robyn Goldman                          Date: 09/18/2024
　　Robyn Goldman

Title: Chief Financial Officer

**ATTACHMENT A**
**COPY OF PRIME AWARD**

Department of Health and Human Services
National Institutes of Health
NATIONAL INSTITUTE ON DRUG ABUSE

**Notice of Award**
FAIN# R00DA055508
**Federal Award Date**
07/19/2024

## Recipient Information

**1. Recipient Name**
ILLINOIS INSTITUTE OF TECHNOLOGY
10 W 35TH ST
CHICAGO, IL 60616

**2. Congressional District of Recipient**
01

**3. Payment System Identifier (ID)**
1362170136A1

**4. Employer Identification Number (EIN)**
362170136

**5. Data Universal Numbering System (DUNS)**
042084434

**6. Recipient's Unique Entity Identifier**
E2NDENMDUEG8

**7. Project Director or Principal Investigator**
Arryn Aleia Guy, PHD

Aguy1@iit.edu

**8. Authorized Official**
Toni Allen
osrp@iit.edu
312-567-7135

## Federal Agency Information

**9. Awarding Agency Contact Information**
Pamela S. Fleming
Grants Management Officer
NATIONAL INSTITUTE ON DRUG ABUSE
pfleming@mail.nih.gov
301-480-1159

**10. Program Official Contact Information**
Richard A Jenkins
Health Scientist Administrator
NATIONAL INSTITUTE ON DRUG ABUSE
jenkinsri@mail.nih.gov
301-443-6504

## Federal Award Information

**11. Award Number**
4R00DA055508-03

**12. Unique Federal Award Identification Number (FAIN)**
R00DA055508

**13. Statutory Authority**
42 USC 241 42 CFR 52

**14. Federal Award Project Title**
A Gender-Affirming Stigma Intervention to Improve Substance Misuse and HIV Risk among Transgender Women

**15. Assistance Listing Number**
93.279

**16. Assistance Listing Program Title**
Drug Abuse and Addiction Research Programs

**17. Award Action Type**
Extension with or without funds

**18. Is the Award R&D?**
Yes

| Summary Federal Award Financial Information | |
|---|---|
| **19. Budget Period Start Date** 08/01/2024 – **End Date** 07/31/2025 | |
| **20. Total Amount of Federal Funds Obligated by this Action** |  |
|     20 a.  Direct Cost Amount | |
|     20 b.  Indirect Cost Amount | |
| 21. Authorized Carryover | |
| 22. Offset | |
| 23. Total Amount of Federal Funds Obligated this budget period | |
| **24. Total Approved Cost Sharing or Matching, where applicable** | |
| **25. Total Federal and Non-Federal Approved this Budget Period** | |
| **26. Project Period Start Date** 08/01/2022 – **End Date** 07/31/2027 | |
| 27. Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | |

**28. Authorized Treatment of Program Income**
Additional Costs

**29. Grants Management Officer - Signature**
Carol  Alderson

## 30. Remarks

Acceptance of this award, including the "Terms and Conditions," is acknowledged by the recipient when funds are drawn down or otherwise requested from the grant payment system.

Notice of Award



**RESEARCH TRANSITION AWARD**
Department of Health and Human Services
National Institutes of Health

NATIONAL INSTITUTE ON DRUG ABUSE



---

**SECTION I – AWARD DATA – 4R00DA055508-03**

**Principal Investigator(s):**
Arryn Aleia Guy, PHD

**Award e-mailed to:** osrp@iit.edu

Dear Authorized Official:

The National Institutes of Health hereby awards a grant in the amount of ▮▮▮▮▮▮ (see "Award Calculation" in Section I and "Terms and Conditions" in Section III) to ILLINOIS INSTITUTE OF TECHNOLOGY in support of the above referenced project. This award is pursuant to the authority of 42 USC 241 42 CFR 52 and is subject to the requirements of this statute and regulation and of other referenced, incorporated or attached terms and conditions.

Acceptance of this award, including the "Terms and Conditions," is acknowledged by the recipient when funds are drawn down or otherwise requested from the grant payment system.

Each publication, press release, or other document about research supported by an NIH award must include an acknowledgment of NIH award support and a disclaimer such as "Research reported in this publication was supported by the National Institute On Drug Abuse of the National Institutes of Health under Award Number R00DA055508. The content is solely the responsibility of the authors and does not necessarily represent the official views of the National Institutes of Health." Prior to issuing a press release concerning the outcome of this research, please notify the NIH awarding IC in advance to allow for coordination.

Award recipients must promote objectivity in research by establishing standards that provide a reasonable expectation that the design, conduct and reporting of research funded under NIH awards will be free from bias resulting from an Investigator's Financial Conflict of Interest (FCOI), in accordance with the 2011 revised regulation at 42 CFR Part 50 Subpart F. The Institution shall submit all FCOI reports to the NIH through the eRA Commons FCOI Module. The regulation does not apply to Phase I Small Business Innovative Research (SBIR) and Small Business Technology Transfer (STTR) awards. Consult the NIH website http://grants.nih.gov/grants/policy/coi/ for a link to the regulation and additional important information.

If you have any questions about this award, please direct questions to the Federal Agency contacts.

Sincerely yours,

Carol Alderson
Grants Management Officer
NATIONAL INSTITUTE ON DRUG ABUSE

Additional information follows

---

**Cumulative Award Calculations for this Budget Period (U.S. Dollars)**
**Salaries and Wages**                                                     ▮▮▮▮▮

**Fringe Benefits**
**Personnel Costs (Subtotal)**
**Consultant Services**
**Materials & Supplies**
**Travel**
**Other**
**Subawards/Consortium/Contractual Costs**



**Federal Direct Costs**
**Federal F&A Costs**
**Approved Budget**
**Total Amount of Federal Funds Authorized (Federal Share)**
**TOTAL FEDERAL AWARD AMOUNT**

**AMOUNT OF THIS ACTION (FEDERAL SHARE)**

| YR | THIS AWARD | | CUMULATIVE TOTALS | |
|---|---|---|---|---|
| SUMMARY TOTALS FOR ALL YEARS (for this Document Number) | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |

Recommended future year total cost support, subject to the availability of funds and satisfactory progress of the project

<u>Fiscal Information:</u>
**Payment System Identifier:**     1362170136A1
**Document Number:**          RDA055508B
**PMS Account Type:**         P (Subaccount)
**Fiscal Year:**              2024

| IC | CAN | 2024 | 2025 | 2026 |
|---|---|---|---|---|
| DA | 8472628 | | | |

Recommended future year total cost support, subject to the availability of funds and satisfactory progress of the project

**NIH Administrative Data:**
**PCC**: CV/RJP / **OC**: 41025 / **Released**:  07/18/2024
**Award Processed:** 07/19/2024 12:20:31 AM

**SECTION II – PAYMENT/HOTLINE INFORMATION – 4R00DA055508-03**

For payment and HHS Office of Inspector General Hotline information, see the NIH Home Page at
http://grants.nih.gov/grants/policy/awardconditions.htm

**SECTION III – STANDARD TERMS AND CONDITIONS – 4R00DA055508-03**

This award is based on the application submitted to, and as approved by, NIH on the above-titled project and is subject to the terms and conditions incorporated either directly or by reference in the following:

 a.  The grant program legislation and program regulation cited in this Notice of Award.
 b.  Conditions on activities and expenditure of funds in other statutory requirements, such as those included in appropriations acts.
 c.  45 CFR Part 75.
 d.  National Policy Requirements and all other requirements described in the NIH Grants Policy Statement, including addenda in effect as of the beginning date of the budget period.
 e.  Federal Award Performance Goals: As required by the periodic report in the RPPR or in the final progress report when applicable.
 f.  This award notice, INCLUDING THE TERMS AND CONDITIONS CITED BELOW.

(See NIH Home Page at http://grants.nih.gov/grants/policy/awardconditions.htm for certain references cited above.)

**Research and Development (R&D):**  All awards issued by the National Institutes of Health (NIH) meet the definition of "Research and Development" at 45 CFR Part§ 75.2. As such, auditees should identify NIH awards as part of the R&D cluster on the Schedule of Expenditures of Federal Awards (SEFA). The auditor should test NIH awards for compliance as instructed in Part V, Clusters of Programs. NIH recognizes that some awards may have another classification for purposes of indirect costs. The auditor is not required to report the disconnect (i.e., the award is classified as R&D for Federal Audit Requirement purposes but non-research for indirect cost rate purposes), unless the auditee is charging indirect costs at a rate other than the rate(s) specified in the award document(s).

An unobligated balance may be carried over into the next budget period without Grants Management Officer prior approval.

This grant is subject to Streamlined Noncompeting Award Procedures (SNAP).

This award is subject to the requirements of 2 CFR Part 25 for institutions to obtain a unique entity identifier (UEI) and maintain an active registration in the System for Award Management (SAM).  Should a consortium/subaward be issued under this award, a UEI requirement must be included.   See http://grants.nih.gov/grants/policy/awardconditions.htm for the full NIH award term implementing this requirement and other additional information.

This award has been assigned the Federal Award Identification Number (FAIN) R00DA055508. Recipients must document the assigned FAIN on each consortium/subaward issued under this award.

Based on the project period start date of this project, this award is likely subject to the Transparency Act subaward and executive compensation reporting requirement of 2 CFR Part 170. There are conditions that may exclude this award; see http://grants.nih.gov/grants/policy/awardconditions.htm for additional award applicability information.

In accordance with P.L. 110-161, compliance with the NIH Public Access Policy is now mandatory. For more information, see NOT-OD-08-033 and the Public Access website: http://publicaccess.nih.gov/.

This award provides support for one or more clinical trials. By law (Title VIII, Section 801 of Public Law 110-85), the "responsible party" must register "applicable clinical trials" on the ClinicalTrials.gov Protocol Registration System Information Website. NIH encourages registration of all trials whether required under the law or not. For more information, see http://grants.nih.gov/ClinicalTrials_fdaaa/

Recipients must administer the project in compliance with federal civil rights laws that prohibit discrimination on the basis of race, color, national origin, disability, age, and comply with applicable conscience protections. The recipient will comply with applicable laws that prohibit discrimination on the basis of sex, which includes discrimination on the basis of gender identity, sexual orientation, and pregnancy. Compliance with these laws requires taking reasonable steps to provide meaningful access to persons with limited English proficiency and providing programs that are accessible to and usable by persons with disabilities. The HHS Office for Civil Rights provides guidance on complying with civil rights laws enforced by HHS. See https://www.hhs.gov/civil-rights/for-providers/provider-obligations/index.html and https://www.hhs.gov/.

- Recipients of FFA must ensure that their programs are accessible to persons with limited English proficiency. For guidance on meeting the legal obligation to take reasonable steps to ensure meaningful access to programs or activities by limited English proficient individuals, see https://www.hhs.gov/civil-rights/for-individuals/special-topics/limited-english-proficiency/fact-sheet-guidance/index.html and https://www.lep.gov.
- For information on an institution's specific legal obligations for serving qualified individuals with disabilities, including providing program access, reasonable modifications, and to provide effective communication, see http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html.
- HHS funded health and education programs must be administered in an environment free of sexual harassment; see https://www.hhs.gov/civil-rights/for-individuals/sex-discrimination/index.html. For information about NIH's commitment to supporting a safe and respectful work environment, who to contact with questions or concerns, and what NIH's expectations are for institutions and the individuals supported on NIH-funded awards, please see https://grants.nih.gov/grants/policy/harassment.htm.
- For guidance on administering programs in compliance with applicable federal religious nondiscrimination laws and applicable federal conscience protection and associated anti-discrimination laws, see https://www.hhs.gov/conscience/conscience-protections/index.html and

https://www.hhs.gov/conscience/religious-freedom/index.html.

In accordance with the regulatory requirements provided at 45 CFR 75.113 and Appendix XII to 45 CFR Part 75, recipients that have currently active Federal grants, cooperative agreements, and procurement contracts with cumulative total value greater than $10,000,000 must report and maintain information in the System for Award Management (SAM) about civil, criminal, and administrative proceedings in connection with the award or performance of a Federal award that reached final disposition within the most recent five-year period.  The recipient must also make semiannual disclosures regarding such proceedings. Proceedings information will be made publicly available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)). Full reporting requirements and procedures are found in Appendix XII to 45 CFR Part 75. This term does not apply to NIH fellowships.

**Treatment of Program Income:**
Additional Costs

---

**SECTION IV –  DA SPECIFIC AWARD CONDITIONS – 4R00DA055508-03**

Clinical Trial Indicator: Yes
This award supports one or more NIH-defined Clinical Trials. See the NIH Grants Policy Statement Section 1.2 for NIH definition of Clinical Trial.

**This award contains grant-specific restrictions. These restrictions may only be lifted by a revised Notice of Award (NoA).**

**HUMAN SUBJECTS RESTRICTION- IRB APPROVAL REQUIRED**
This award is issued without a currently valid certification of Institutional Review Board (IRB) approval for this project with the following restriction: Only activities that are clearly severable and independent from activities that involve human subjects may be conducted pending NIDA's acceptance of the certification of IRB approval.  No funds may be drawn down from the payment system and no obligations may be made against Federal funds for research involving human subjects at any site engaged in such research for any period not covered by an Office for Human Research Protections Assurance and an IRB approval consistent with the requirements of 45 CFR Part 46. **IRB approval must be submitted within 60 days from the issue date of the Notice of Award.**

See the NIH Grants Policy Statement, section on Human Subjects Protections http://grants.nih.gov/policy/nihgps/index.htm for specific requirements related to the protection of human subjects, which are applicable to this term and condition of award.

**HUMAN SUBJECTS RESTRICTION- DATA AND SAFETY MONITORING BOARD REQUIRED**
This award is contingent upon establishment of a Data and Safety Monitoring Board, in accordance with the Guidelines for Establishing and Operating a Data and Safety Monitoring Board (DSMB). Confirmation that a DSMB has been established in accordance with NIDA Guidelines must be provided by the AOR **within 60 days from the issue date of the Notice of Award.** This confirmation should be submitted to the NIDA Program Official and Grants Management Specialist listed in eRA Commons. Recruitment of subjects for the trial supported by this award cannot begin until this confirmation is received, and a revised Notice of Award is issued to remove the restriction.

_____

**FY2024 FUNDING**
The award amount for the current year is based upon IRG/Council recommendations, cost analysis, program priorities and availability of funds.

**R00 EFFORT REQUIREMENTS**
This award requires a minimum of 9.00 person months' effort (75%) be devoted to research activity - PA-20-187 (https://grants.nih.gov/grants/guide/pa-files/PA-20-187.html).

**DATA AND SAFETY MONITORING PLAN**
This award is subject to the Data and Safety Monitoring Plan (DSMP) submitted and approved by NIDA via application dated 5/23/2024.  Any changes in the DSMP must be reviewed and approved by the NIDA Program Official.  If changes are approved, the approval will be reflected on the Notice of Award (NoA) via revision.  If changes are not approved, the Principal Investigator must revise the DSMP to the satisfaction of the NIDA Program Official.  The Principal Investigator must provide a DSMP for any new trial that is to be conducted under this grant.

**CONSORTIUM ACTIVITY**
This award includes funds awarded for consortium activities.  Consortia are to be established and administered as described in the NIH Grants Policy Statement (NIH GPS), Section on Consortium Agreements - http://grants.nih.gov/policy/nihgps/index.htm.

The recipient is reminded of the *NIH Final Updated Policy Guidance for Subaward/Consortium Written Agreements* as published in the NIH Guide notice NOT-OD-23-182 on September 15, 2023 with an effective date of January 1, 2024.  The notice can be found here: https://grants.nih.gov/grants/guide/notice-files/NOT-OD-23-182.html

**NIDA TERMS**
In conjunction with the Acknowledgment of Federal Funding Requirement (as specified in the NIH Grants Policy Statement, Appropriation Mandates- http://grants.nih.gov/policy/nihgps/index.htm, in order to most effectively disseminate research results, advance notice should be given to NIDA that research findings are about to be published so that we may coordinate accurate and timely release to the media. This information will be embargoed until the publication date. Please see the NIDA Special Considerations Page for guidance on coordination with the NIDA Press Office at https://www.drugabuse.gov/funding/special-considerations-for-nida-funding, or contact the NIDA Press Office at media@nida.nih.gov.

Please see Special Considerations for NIDA Funding Opportunities and Awards at https://www.drugabuse.gov/funding/special-considerations-for-nida-funding.

**SPREADSHEET SUMMARY**
**AWARD NUMBER:** 4R00DA055508-03

**INSTITUTION:** ILLINOIS INSTITUTE OF TECHNOLOGY

| Budget | Year 3 | Year 4 | Year 5 |
|---|---|---|---|
| Salaries and Wages | █ | █ | █ |
| Fringe Benefits | █ | █ | █ |
| Personnel Costs (Subtotal) | █ | | |
| Consultant Services | | | |
| Materials & Supplies | | █ | █ |
| Travel | | | |
| Other | █ | █ | █ |
| Subawards/Consortium/Contractual Costs | █ | █ | █ |
| TOTAL FEDERAL DC | █ | █ | █ |
| TOTAL FEDERAL F&A | █ | █ | █ |
| TOTAL COST | █ | █ | █ |

| Facilities and Administrative Costs | Year 3 | Year 4 | Year 5 |
|---|---|---|---|
| F&A Cost Rate 1 | 55% | 55% | 55% |
| F&A Cost Base 1 | █ | █ | █ |
| F&A Costs 1 | █ | █ | █ |

**ATTACHMENT B**
**STATEMENT OF WORK**

SCOPE OF WORK
Los Angeles LGBT Center
"A Gender-Affirming Stigma Intervention to Improve Substance Misuse and HIV Risk Among
Transgender Adults"

The Los Angeles LGBT Center's research program will conduct recruitment, enrollment, and community engagement for this study. The research coordinator (10%/1.2 CM) will distribute virtual and digital advertising materials and visit Center sites in person to engage Center clients and inform them about the study. They will meet on a regular basis with the Principal Investigator to provide study updates and learn about study implementation.

A25-0025-S001

If award is FFATA eligible and SOW exceeds 4000 characters, include a *Subrecipient Federal Award Project Description* (not to exceed 4000 characters)

A25-0025-S001

## Reports

University will check all that apply and Subrecipient will agree to:

☒ A Final technical/progress report will be submitted to University's Technical Contact identified in Attachment D within sixty (60) days after the Expiration Date.

☐ Monthly technical/progress reports will be submitted to University's Technical Contact identified in Attachment D, within ten (10) days of the end of the month.

☐ Quarterly technical/progress reports will be submitted to University's Technical Contact identified in Attachment D, within fifteen (15) days of the end of the quarter.

☒ Technical/progress reports on the project as may be required, from time to time, by University's Technical Contact in order that University may be able to satisfy its reporting obligations to the Sponsor.

☒ Annual technical /progress reports will be submitted within thirty (30) days prior to the end of each project period to University's Technical Contact and Administrative Contact identified in Attachment D. Such report shall also include a detailed budget for the next budget period, updated Other Support for key personnel, certification of appropriate education in the conduct of human subject research of any new key personnel, and annual IRB or IACUC approval, if applicable.

☒ A final invoice, marked "FINAL", shall be submitted by the Subrecipient to University's Financial Contact within sixty (60) days after the Expiration Date. The final invoice shall constitute the Subrecipient's final financial report.

☐ Subrecipient agrees to notify the University's Administrative Representative within thirty (30) days after Subrecipient's inventor discloses, in writing, any invention conceived or first actually reduced to practice in the performance of this Agreement to Subrecipient's personnel responsible for patent matters. Subrecipient shall submit a final invention report using Sponsor's specific forms to University's Administrative Representative within sixty (60) days of the Expiration Date. A negative report is required.

☐ A Certification of Completion, in accordance with 2 CFR 200.201(b)(3), will be submitted within sixty (60) days after the end of the project period to University's Administrative Contact identified in Attachment D (for Fixed Price subawards only.)

☐ Property Inventory Report; frequency, type, and submission instructions listed here and only to be used when required by the Prime Award.

☐ Other Special Reporting Requirements:

**ATTACHMENT C**
**BUDGET**

Direct Costs:                          $10,464

Indirect Costs:                        $2,072

Total Costs:                           $12,536

Indirect Cost Rate (IDC) Applied:      _____21.80%_ on ☐ DC, ☒ MTDC, or ☐ Other

Check here if using *de minimis* rate of 10% ☐

## RESEARCH & RELATED BUDGET - Budget Period 1

OMB Number: 4040-0001
Expiration Date: 11/30/2025

UEI: P8IBR8HLB7C8    Enter name of Organization: Los Angeles LGBT Center

Budget Type:  ☐ Project  ☒ Subaward/Consortium    Budget Period: 1    Start Date: 08/01/2024    End Date: 07/31/2025

### A. Senior/Key Person

| Prefix | First | Middle | Last | Suffix | Base Salary ($) | Cal. | Months Acad. | Sum. | Requested Salary ($) | Fringe Benefits ($) | Funds Requested ($) |
|--------|-------|--------|------|--------|-----------------|------|--------------|------|----------------------|---------------------|---------------------|
|        |       |        |      |        |                 |      |              |      |                      |                     |                     |

Project Role: PD/PI

Additional Senior Key Persons: [ ]    [Add Attachment] [Delete Attachment] [View Attachment]    Total Funds requested for all Senior Key Persons in the attached file [ ]

Total Senior/Key Person [ ]

### B. Other Personnel

| Number of Personnel | Project Role | Cal. | Months Acad. | Sum. | Requested Salary ($) | Fringe Benefits ($) | Funds Requested ($) |
|---------------------|--------------|------|--------------|------|----------------------|---------------------|---------------------|
|  | Post Doctoral Associates |  |  |  |  |  |  |
|  | Graduate Students |  |  |  |  |  |  |
|  | Undergraduate Students |  |  |  |  |  |  |
|  | Secretarial/Clerical |  |  |  |  |  |  |
| 1 | Research Administrative Coordinator | 1.20 |  |  | 7,427.00 | 2,076.00 | 9,503.00 |

| 1 | Total Number Other Personnel |

Total Other Personnel | 9,503.00

Total Salary, Wages and Fringe Benefits (A+B) | 9,503.00

## C. Equipment Description

**List items and dollar amount for each item exceeding $5,000**

| Equipment item | Funds Requested ($) |
|---|---|
| | |

Additional Equipment: [_____]  [Add Attachment]  [Delete Attachment]  [View Attachment]

| | |
|---|---|
| Total funds requested for all equipment listed in the attached file | |
| Total Equipment | |

## D. Travel

|  |  | Funds Requested ($) |
|---|---|---|
| 1. | Domestic Travel Costs ( Incl. Canada, Mexico and U.S. Possessions) | |
| 2. | Foreign Travel Costs | |
| | Total Travel Cost | |

## E. Participant/Trainee Support Costs

|  |  | Funds Requested ($) |
|---|---|---|
| 1. | Tuition/Fees/Health Insurance | |
| 2. | Stipends | |
| 3. | Travel | |
| 4. | Subsistence | |
| 5. | Other | |

| Number of Participants/Trainees | Total Participant/Trainee Support Costs |
|---|---|
| | |

**F. Other Direct Costs**

| | | Funds Requested ($) |
|---|---|---:|
| 1. | Materials and Supplies | |
| 2. | Publication Costs | |
| 3. | Consultant Services | |
| 4. | ADP/Computer Services | |
| 5. | Subawards/Consortium/Contractual Costs | |
| 6. | Equipment or Facility Rental/User Fees | |
| 7. | Alterations and Renovations | |
| 8. | Facilities: Building Maintenance and Security | 961.00 |
| 9. | | |
| 10. | | |
| 11. | | |
| 12. | | |
| 13. | | |
| 14. | | |
| 15. | | |
| 16. | | |
| 17. | | |
| | **Total Other Direct Costs** | 961.00 |

**G. Direct Costs**

| | Funds Requested ($) |
|---|---:|
| **Total Direct Costs (A thru F)** | 10,464.00 |

**H. Indirect Costs**

| Indirect Cost Type | Indirect Cost Rate (%) | Indirect Cost Base ($) | Funds Requested ($) |
|---|---|---:|---:|
| Federally Negotiated NICRA | 21.80 | 9,503.00 | 2,072.00 |
| | | **Total Indirect Costs** | 2,072.00 |

**Cognizant Federal Agency**
(Agency Name, POC Name, and POC Phone Number)

**I. Total Direct and Indirect Costs**

| | Funds Requested ($) |
|---|---:|
| **Total Direct and Indirect Institutional Costs (G + H)** | 12,536.00 |

**J. Fee**

Funds Requested ($)

**K. Total Costs and Fee**

| | Funds Requested ($) |
|---|---:|
| **Total Costs and Fee (I + J)** | 12,536.00 |

**L. Budget Justification**

(Only attach one file.)   Budget Justification.pdf   | Add Attachment | Delete Attachment | View Attachment |

### RESEARCH & RELATED BUDGET - Budget Period  2

OMB Number: 4040-0001
Expiration Date: 11/30/2025

UEI: P8IBR8HLB7C8    Enter name of Organization: Los Angeles LGBT Center

Budget Type: ☐ Project    ☒ Subaward/Consortium    Budget Period: 2    Start Date: 08/01/2025    End Date: 07/31/2026

## A. Senior/Key Person

| Prefix | First | Middle | Last | Suffix | Base Salary ($) | Cal. | Months Acad. | Sum. | Requested Salary ($) | Fringe Benefits ($) | Funds Requested ($) |
|--------|-------|--------|------|--------|-----------------|------|------|------|---------------------|---------------------|---------------------|
|        |       |        |      |        |                 |      |      |      |                     |                     |                     |

Project Role: PD/PI

Additional Senior Key Persons: [          ]  [Add Attachment] [Delete Attachment] [View Attachment]    Total Funds requested for all Senior Key Persons in the attached file [          ]

Total Senior/Key Person [          ]

## B. Other Personnel

| Number of Personnel | Project Role | Cal. | Months Acad. | Sum. | Requested Salary ($) | Fringe Benefits ($) | Funds Requested ($) |
|---------------------|--------------|------|------|------|---------------------|---------------------|---------------------|
|        | Post Doctoral Associates |      |      |      |          |          |          |
|        | Graduate Students |      |      |      |          |          |          |
|        | Undergraduate Students |      |      |      |          |          |          |
|        | Secretarial/Clerical |      |      |      |          |          |          |
| 1      | Research Administrative Coordinator | 1.20 |      |      | 7,669.00 | 2,235.00 | 9,904.00 |

| 1 | Total Number Other Personnel | | Total Other Personnel | 9,904.00 |
|---|---|---|---|---|

Total Salary, Wages and Fringe Benefits (A+B)    9,904.00

## C. Equipment Description

**List items and dollar amount for each item exceeding $5,000**

| Equipment item | Funds Requested ($) |
|---|---|
| | |

Additional Equipment: [_____] [ Add Attachment ] [ Delete Attachment ] [ View Attachment ]

| | |
|---|---|
| **Total funds requested for all equipment listed in the attached file** | |
| **Total Equipment** | |

## D. Travel

Funds Requested ($)

1. Domestic Travel Costs ( Incl. Canada, Mexico and U.S. Possessions) | |
2. Foreign Travel Costs | |

| **Total Travel Cost** | |
|---|---|

## E. Participant/Trainee Support Costs

Funds Requested ($)

1. Tuition/Fees/Health Insurance | |
2. Stipends | |
3. Travel | |
4. Subsistence | |
5. Other [_____] | |

[____] **Number of Participants/Trainees**     **Total Participant/Trainee Support Costs** | |

**F. Other Direct Costs**

| | | Funds Requested ($) |
|---|---|---|
| 1. | Materials and Supplies | |
| 2. | Publication Costs | |
| 3. | Consultant Services | |
| 4. | ADP/Computer Services | |
| 5. | Subawards/Consortium/Contractual Costs | |
| 6. | Equipment or Facility Rental/User Fees | |
| 7. | Alterations and Renovations | |
| 8. | Facilities: Building Maintenance and Security | 1,002.00 |
| 9. | | |
| 10. | | |
| 11. | | |
| 12. | | |
| 13. | | |
| 14. | | |
| 15. | | |
| 16. | | |
| 17. | | |
| | **Total Other Direct Costs** | 1,002.00 |

**G. Direct Costs**

| | Funds Requested ($) |
|---|---|
| **Total Direct Costs (A thru F)** | 10,906.00 |

**H. Indirect Costs**

| Indirect Cost Type | Indirect Cost Rate (%) | Indirect Cost Base ($) | Funds Requested ($) |
|---|---|---|---|
| Federally Negotiated NICRA | 21.80 | 9,904.00 | 2,159.00 |
| | | **Total Indirect Costs** | 2,159.00 |

**Cognizant Federal Agency**
(Agency Name, POC Name, and
POC Phone Number)

**I. Total Direct and Indirect Costs**

| | Funds Requested ($) |
|---|---|
| **Total Direct and Indirect Institutional Costs (G + H)** | 13,065.00 |

**J. Fee**

| | Funds Requested ($) |
|---|---|
| | |

**K. Total Costs and Fee**

| | Funds Requested ($) |
|---|---|
| **Total Costs and Fee (I + J)** | 13,065.00 |

**L. Budget Justification**

(Only attach one file.)  Budget Justification.pdf  [Add Attachment]  [Delete Attachment]  [View Attachment]

## RESEARCH & RELATED BUDGET - Budget Period 3

OMB Number: 4040-0001
Expiration Date: 11/30/2025

UEI: `P8IBR8HLB7C8`    Enter name of Organization: `Los Angeles LGBT Center`

Budget Type: ☐ Project    ☒ Subaward/Consortium    Budget Period: 3    Start Date: `08/01/2026`    End Date: `07/31/2027`

### A. Senior/Key Person

| Prefix | First | Middle | Last | Suffix | Base Salary ($) | Cal. | Months Acad. | Sum. | Requested Salary ($) | Fringe Benefits ($) | Funds Requested ($) |
|--------|-------|--------|------|--------|-----------------|------|--------------|------|----------------------|---------------------|---------------------|
|        |       |        |      |        |                 |      |              |      |                      |                     |                     |

Project Role: `PD/PI`

Additional Senior Key Persons: [                    ]    [Add Attachment] [Delete Attachment] [View Attachment]    Total Funds requested for all Senior Key Persons in the attached file [                    ]

Total Senior/Key Person [                    ]

### B. Other Personnel

| Number of Personnel | Project Role | Cal. | Months Acad. | Sum. | Requested Salary ($) | Fringe Benefits ($) | Funds Requested ($) |
|---------------------|--------------|------|--------------|------|----------------------|---------------------|---------------------|
|  | Post Doctoral Associates |  |  |  |  |  |  |
|  | Graduate Students |  |  |  |  |  |  |
|  | Undergraduate Students |  |  |  |  |  |  |
|  | Secretarial/Clerical |  |  |  |  |  |  |
| 1 | Research Administrative Coordinator | 1.20 |  |  | 7,887.00 | 2,406.00 | 10,293.00 |

| 1 | Total Number Other Personnel |

Total Other Personnel [10,293.00]

Total Salary, Wages and Fringe Benefits (A+B) [10,293.00]

## C. Equipment Description

**List items and dollar amount for each item exceeding $5,000**

Equipment item | Funds Requested ($)
--- | ---

Additional Equipment: [ _____ ] [ Add Attachment ] [ Delete Attachment ] [ View Attachment ]

Total funds requested for all equipment listed in the attached file

Total Equipment

## D. Travel

Funds Requested ($)

1. Domestic Travel Costs ( Incl. Canada, Mexico and U.S. Possessions)

2. Foreign Travel Costs

Total Travel Cost

## E. Participant/Trainee Support Costs

Funds Requested ($)

1. Tuition/Fees/Health Insurance

2. Stipends

3. Travel

4. Subsistence

5. Other

Number of Participants/Trainees        Total Participant/Trainee Support Costs

**F. Other Direct Costs**

| | | Funds Requested ($) |
|---|---|---|
| 1. | Materials and Supplies | |
| 2. | Publication Costs | |
| 3. | Consultant Services | |
| 4. | ADP/Computer Services | |
| 5. | Subawards/Consortium/Contractual Costs | |
| 6. | Equipment or Facility Rental/User Fees | |
| 7. | Alterations and Renovations | |
| 8. | Facilities: Building Maintenance and Security | 1,041.00 |
| 9. | | |
| 10. | | |
| 11. | | |
| 12. | | |
| 13. | | |
| 14. | | |
| 15. | | |
| 16. | | |
| 17. | | |
| | **Total Other Direct Costs** | 1,041.00 |

**G. Direct Costs**

| | Funds Requested ($) |
|---|---|
| **Total Direct Costs (A thru F)** | 11,334.00 |

**H. Indirect Costs**

| Indirect Cost Type | Indirect Cost Rate (%) | Indirect Cost Base ($) | Funds Requested ($) |
|---|---|---|---|
| Federally Negotiated NICRA | 21.80 | 10,293.00 | 2,244.00 |
| | | **Total Indirect Costs** | 2,244.00 |

**Cognizant Federal Agency**
(Agency Name, POC Name, and POC Phone Number)

**I. Total Direct and Indirect Costs**

| | Funds Requested ($) |
|---|---|
| **Total Direct and Indirect Institutional Costs (G + H)** | 13,578.00 |

**J. Fee**

| | Funds Requested ($) |
|---|---|
| | |

**K. Total Costs and Fee**

| | Funds Requested ($) |
|---|---|
| **Total Costs and Fee (I + J)** | 13,578.00 |

**L. Budget Justification**

(Only attach one file.)  Budget Justification.pdf  [Add Attachment] [Delete Attachment] [View Attachment]

**RESEARCH & RELATED BUDGET - Cumulative Budget**

**Totals ($)**

| | |
|---|---|
| **Section A, Senior/Key Person** | |
| **Section B, Other Personnel** | 29,700.00 |
| Total Number Other Personnel | 3 |
| **Total Salary, Wages and Fringe Benefits (A+B)** | 29,700.00 |
| **Section C, Equipment** | |
| **Section D, Travel** | |
| 1.  Domestic | |
| 2.  Foreign | |
| **Section E, Participant/Trainee Support Costs** | |
| 1.  Tuition/Fees/Health Insurance | |
| 2.  Stipends | |
| 3.  Travel | |
| 4.  Subsistence | |
| 5.  Other | |
| 6.  Number of Participants/Trainees | |
| **Section F, Other Direct Costs** | 3,004.00 |
| 1.  Materials and Supplies | |
| 2.  Publication Costs | |
| 3.  Consultant Services | |
| 4.  ADP/Computer Services | |
| 5.  Subawards/Consortium/Contractual Costs | |
| 6.  Equipment or Facility Rental/User Fees | |
| 7.  Alterations and Renovations | |
| 8.  Other 1 | 3,004.00 |
| 9.  Other 2 | |
| 10. Other 3 | |
| 11. Other 4 | |
| 12. Other 5 | |
| 13. Other 6 | |
| 14. Other 7 | |
| 15. Other 8 | |
| 16. Other 9 | |
| 17. Other 10 | |

**Section G, Direct Costs (A thru F)**  |  32,704.00

**Section H, Indirect Costs**  |  6,475.00

**Section I, Total Direct and Indirect Costs (G + H)**  |  39,179.00

**Section J, Fee**  |

**Section K, Total Costs and Fee (I + J)**  |  39,179.00

**ATTACHMENT D**
**SUBAWARD CONTACTS**

**University Contacts**

| Administrative Contact | Technical Contact |
|---|---|
| Deborah Richard | Arryn Guy |
| Research Administrator | Assistant Professor of Psychology |
| Illinois Institute of Technology | Illinois Institute of Technology |
| 10 West 35th Street, IIT Tower, STE 7D7-1 | 3424 South State Street, Rm 201 |
| Chicago, IL 60616-3717 | Chicago, IL 60616-3717 |
| Phone: (312) 567-3099 | Phone: (312) 567-567-7141 |
| Email: drichard1@iit.edu | Email: aguy1@iit.edu |
|  |  |
| **Financial Contact** | **Authorized Official** |
| Karen Hawthorne | Lisa Machtemes |
| Director, Grant and Contract Accounting | Director, Grant Award Negotiations and Acceptance |
| Illinois Institute of Technology | Illinois Institute of Technology |
| 3424 South State Street, STE TC 4C8-2 | 10 West 35th Street, IIT Tower, STE 7D7-1 |
| Chicago, IL 60616-5374 | Chicago, IL 60616-3717 |
| Phone: (312) 567-3311 | Phone: (312) 567-5717 |
| Email: khawthorne@iit.edu | Email: lmachtemes@iit.edu |

**Subrecipient Contacts**

| Administrative Contact | Technical Contact |
|---|---|
| Kate Perl | Risa Flynn |
| Senior Grant Writer | Director of Research |
| Los Angeles LGBT Center | Los Angeles LGBT Center |
| 1118 N. McCadden Place | 1118 N. McCadden Place |
| Los Angeles, CA 90038-1213 | Los Angeles, CA 90038-1213 |
| Phone: (323) 993-7558 | Phone: 323-993-7556 |
| Email: kperl@lalgbtcenter.org | Email: rflynn@lalgbtcenter.org |
|  |  |
| **Financial Contact** | **Authorized Official** |
| Valentin Valdez | Robyn Goldman |
| Grants Manager | Chief Financial Officer |
| Los Angeles LGBT Center | Los Angeles LGBT Center |
| 1118 N. McCadden Place | 1118 N. McCadden Place |
| Los Angeles, CA 90038-1213 | Los Angeles, CA 90038-1213 |
| Phone: (213) 466-5070 | Phone: (323) 993-8948 |
| Email: vvaldez@lalgbtcenter.org | Email: robyn.goldman@lalgbtcenter.org |

**ATTACHMENT E**
**SAMPLE SUBRECIPIENT INVOICE/REQUEST FOR REIMBURSEMENT**

Mail invoices to:       Illinois Institute of Technology
                        Attention:  Grant and Contract Accounting
                        **subcontractinvoicing@iit.edu**
                        Phone: (312) 567-3330

All checks will be payable to the name of the SUBRECIPIENT as stated on the agreement

Send payments to:       _____

                        _____

                        _____

Payee Ref. No.:_____        SUBRECIPIENT PI: _____

Project Title:       "Title of Project"_____

Date Prepared: _____        Voucher No:_____

Period Covered: _____

| Expenses | Current Charges | Cumulative | Cost Share (if required per the agreement) | Cumulative Cost Share |
|---|---|---|---|---|
| Salary and Wages | | | | |
| Fringe Benefits | | | | |
| Supplies | | | | |
| Travel | | | | |
| Other Expenses | | | | |
| Indirect Costs | | | | |
| | | | | |
| Total | | | | |
| Less Previous Cumulative Amount | | | | |

**TOTAL AMOUNT DUE TO INSTITUTION:**       $_____

*As an authorized representative of the organization, I certify that all deliverables and required work product due to date have been submitted, and expenditures reported (or payments requested) are for appropriate purposes and in accordance with the statement of work, approved budget and other requirements as set forth in the subaward.*

Signed: _____       Date: _____

Name: _____       Title: _____
        (Payee's Authorized Certifying Official)

E - 1

**ATTACHMENT F**
**SUBRECIPIENT COMPLIANCE INFORMATION FORM**

Subrecipient UEI Number:          P81BR8HLB7C8

Subrecipient EIN Number:          95-3567895

Subrecipient Congressional District:          CA-030

Is the project performance site the technical contact address listed in Attachment D?      Yes ☐ No ☒
If no, please list project performance site below:
Los Angeles LGBT Center
1625 Schrader Blvd
Los Angeles, CA 90028-6213

Is Subrecipient currently registered in the SAM?          Yes ☒ No ☐

Is Subrecipient exempt from reporting executive compensation? Yes ☐ No ☒
If no, please complete the information below.

The names and total compensation of the five most highly compensated officers of the Subrecipient must be listed if:

(1)      the Subrecipient in the preceding fiscal year received:

      i.      80 percent or more of its annual gross revenues in Federal awards (federal contracts (and subcontracts), loans, grants (and subgrants) and cooperative agreements); AND
      ii.      $25,000,000 or more in annual gross revenues from Federal awards; and

(2)      the public does not have access to information about the compensation of the senior executives of the entity through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986.

Officer 1 Name: _____
Officer 1 Compensation: _____

Officer 2 Name: _____
Officer 2 Compensation: _____

Officer 3 Name: _____
Officer 3 Compensation: _____

Officer 4 Name: _____
Officer 4 Compensation: _____

Officer 5 Name: _____
Officer 5 Compensation: _____