# EXHIBIT A



UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

The Director

# MEMORANDUM

**TO:**  Heads and Acting Heads of Departments and Agencies

**FROM:**  Charles Ezell, Acting Director, U.S. Office of Personnel Management

**DATE**:  February 5, 2025

**RE**:  Further Guidance Regarding Ending DEIA Offices, Programs and Initiatives

---

Pursuant to its authority under 5 U.S.C. § 1103(a)(1) and (a)(5), the U.S. Office of Personnel Management ("**OPM**") is providing additional guidance regarding the President's executive orders, including those titled, "*Ending Radical and Wasteful Government DEI Programs and Preferencing*," "*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*," and "*Initial Rescissions of Harmful Executive Orders and Actions*."

**Equal Employment Opportunity Offices:**

To promote a federal workplace committed to equal dignity and respect, and to avoid expending precious taxpayer resources on wasteful and discriminatory programs, agencies should terminate all illegal DEIA initiatives. Agencies should therefore eliminate DEIA offices, policies, programs, and practices (including policies, programs, and practices outside of any DEIA offices) that unlawfully discriminate in any employment action or other term, condition, or privilege of employment, including but not limited to recruiting, interviewing, hiring, training or other professional development, internships, fellowships, promotion, retention, discipline, and separation, based on protected characteristics like race, color, religion, sex, national origin, age, disability, genetic information, or pregnancy, childbirth or related medical condition ("protected characteristics").[1]

Unlawful discrimination related to DEI includes taking action motivated, in whole or in part, by protected characteristics. To be unlawful, a protected characteristic does not need to be the sole or exclusive reason for an agency's action. Among other practices, this includes ending unlawful diversity requirements for the composition of hiring panels, as well as for the composition of candidate pools (also referred to as "diverse slate" policies).

This does not apply to, and agencies should retain, personnel, offices and procedures required by statute or regulation to counsel employees allegedly subjected to discrimination, receive discrimination complaints, collect demographic data, and process accommodation

---

[1] *See* 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.101.

requests.[2] Such functions can and should be transferred among personnel and offices at the agency if those functions were previously handled by a DEIA office that is subject to a reduction-in-force action. In doing so, agencies should take care that the functions of any such office are strictly limited to the duties within its statutory authority and that staffing levels are consistent with those responsibilities.

**Accessibility and Reasonable Accommodation:**

The Biden-Harris Administration conflated longstanding, legally-required obligations related to disability accessibility and accommodation with DEI initiatives. President Trump's executive orders require the elimination of discriminatory practices. Agencies should thus rescind policies and practices that are contrary to the Civil Rights Act of 1964 and the Rehabilitation Act of 1973. But agencies should not terminate or prohibit accessibility or disability-related accommodations, assistance, or other programs that are required by those or related laws.[3] In executing reduction-in-force actions regarding employees in DEIA offices, agencies should therefore retain the minimum number of employees necessary to ensure agency compliance with applicable disability and accessibility laws, including those requiring the collection, maintenance, and reporting of disability information.[4]

**Employee Resource Groups:**

The revocation of Executive Orders 13583 and 14035 removed two of the primary legal authorities for Employee Resource Groups ("ERGs"). Consistent with the President's orders, agencies should prohibit all discriminatory programs. They should thus prohibit ERGs that promote unlawful DEIA initiatives or advance recruitment, hiring, preferential benefits (including but not limited to training or other career development opportunities), or employee retention agendas based on protected characteristics.[5]

Nevertheless, agency heads retain the discretion to allow employees to host affinity group lunches, engage in mentorship programs, and otherwise gather for social and cultural events. When exercising this discretion, agency heads should consider whether activities under consideration are consistent with the "*Ending Radical and Wasteful Government DEI Programs and Preferencing*" and "*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*" executive orders, and the broader goal of creating a federal workplace focused on individual merit.

For any such activities which are retained, agencies must ensure that attendance at such events is not restricted (explicitly or functionally) by any protected characteristics, and that attendees are not segregated by any protected characteristics during the events. For example, it

---

[2] *See* 29 C.F.R. § 1614 et seq.

[3] *See, e.g.*, 29 U.S.C. §§ 729, 791; 29 C.F.R. § 1614 et seq.; 42 U.S.C. § 2000e et seq.

[4] *See, e.g.*, 29 C.F.R. § 1614.601.

[5] 5 C.F.R. § 251.202 (allowing agencies to provide support and agency resources to ERGs only where doing so would "benefit the agency.") Different considerations may apply where employees form workplace groups on the basis of similar interests or experiences, and not protected characteristics.

would be unlawful discrimination for an agency to limit attendance at an ethnic affinity group lunch to only members of the ethnic group, or to permit employees to discourage attendance by employees outside of the ethnic group. It would be similarly unlawful to host social or cultural event or other "inclusion"-related event or training while segregating participating employees into separate groups of "White" and "People of Color" (or other compositions based upon protected characteristics). Finally, to the extent that an agency exercises its discretion to permit ERGs, affinity group events, or other similar events, the agency may not draw distinctions based on any protected characteristic in granting permission to groups and events. For example, an agency cannot permit the formation of ERGs only for certain racial groups but not others, or only for one sex, or only certain religions but not others.

### Special Emphasis Programs:

Agencies should promptly end illegal preferences and discrimination and restore merit-based equal employment opportunity. Agencies should accordingly reorganize and, to the extent necessary, eliminate Special Emphasis Programs that promote DEIA based on protected characteristics in any employment action or other term, condition, or privilege of employment, including but not limited to recruiting, interviewing, hiring, training or other professional development, internships, fellowships, promotion, retention, discipline, and separation. Consistent with the President's directives and civil rights law, including Executive Order 11478 and 29 C.F.R. § 1614.101 *et seq.*, agencies should focus personnel efforts on rewarding individual excellence.

### Other Authorities:

The Constitution vests the executive power in the President.[6] The President accordingly sets Executive Branch policy. It is the President's policy to eliminate all unlawful discrimination in the federal workforce. Agencies should therefore adhere to the President's orders rather than non-binding opinions and guidance promoting DEIA through ERGs, Special Emphasis Programs, or otherwise.

cc: Chief Human Capital Officers (CHCOs), Deputy CHCOs, Human Resources Directors, and Chiefs of Staff

---

[6] *See Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020).