| | |
|---|---|
| JENNIFER C. PIZER (SBN 152327)<br>jpizer@lambdalegal.org<br>PELECANOS*<br>pelecanos@lambdalegal.org<br>LAMBDA LEGAL DEFENSE AND<br>EDUCATION FUND, INC.<br>800 South Figueroa Street, Suite 1260<br>Los Angeles, California 90017-2521<br>Telephone: (213) 382-7600<br><br>JOSE ABRIGO*<br>jabrigo@lambdalegal.org<br>OMAR GONZALEZ-PAGAN*<br>ogonzalez-pagan@lambdalegal.org<br>LAMBDA LEGAL DEFENSE AND<br>EDUCATION FUND, INC.<br>120 Wall Street, 19th Floor<br>New York, New York 10005-3919<br>Telephone: (212) 809-8585<br><br>CAMILLA B. TAYLOR*<br>ctaylor@lambdalegal.org<br>KENNETH D. UPTON, JR*<br>kupton@lambdalegal.org<br>LAMBDA LEGAL DEFENSE AND<br>EDUCATION FUND, INC.<br>3656 North Halsted Street<br>Chicago, Illinois 60613-5974<br>Telephone: (312) 663-4413 | KAREN L. LOEWY*<br>kloewy@lambdalegal.org<br>LAMBDA LEGAL DEFENSE AND<br>EDUCATION FUND, INC.<br>815 16th Street NW, Suite 4140<br>Washington, DC 20006-4101<br>Telephone: (202) 804-6245<br><br>*Counsel for Plaintiffs*<br>*\*Appearance Pro Hac Vice*<br><br>PARDIS GHEIBI (D.C. Bar No. 90004767)<br>Trial Attorney, U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 305-3246<br>Pardis.Gheibi@usdoj.gov<br><br>CRAIG H. MISSAKIAN (CABN 125202)<br>United States Attorney<br><br>Kenneth W. Brakebill (CABN 196696)<br>Acting Chief, Civil Division<br>CHRISTOPHER F. JEU (CABN 247865)<br>Assistant United States Attorney<br>60 South Market Street, Suite 1200<br>San Jose, California 95113<br>Telephone: (408) 535-5082<br>FAX: (408) 535-5066<br>Christopher.Jeu@usdoj.gov<br><br>*Attorneys for Federal Defendants* |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SAN FRANCISCO AIDS FOUNDATION, et al.;<br><br>          *Plaintiffs*,<br><br>     v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.<br><br>          *Defendants*. | Case No. 4:25-cv-1824-JST<br><br>**JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT**<br><br>**Case Management Conference:**<br>Tuesday, June 10, 2025, 2:00 p.m.<br><br>Hon. Jon S. Tigar<br>United States District Court Judge |

**PLAINTIFFS** San Francisco Aids Foundation; Gay Lesbian Bisexual Transgender Historical Society; Asian and Pacific Islander Wellness Center, Inc. d/b/a San Francisco Community Health Center; Los Angeles LGBT Center; Prisma Community Care; Lesbian and Gay Community Services Center, Inc. d/b/a The LGBT Community Center; Bradbury-Sullivan LGBT Community Center; Baltimore Safe Haven Corp.; and Forge, Inc., and

**FEDERAL DEFENDANTS**[1] Donald J. Trump, in his official capacity as President of the United States; U.S. Department of Justice; Pamela Bondi, in her official capacity as Attorney General of the United States; U.S. Department of Labor; Lori Chavez-DeRemer, in her official capacity as U.S. Secretary of Labor; Office of Federal Contracts Compliance Programs; Catherine Eschbach, in her official capacity as Director of the Office of Federal Contracts Compliance Programs; Office of Management and Budget; Russell Vought, in his official capacity as Director of the Office of Management and Budget; U.S. Department of Health and Human Services; Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services; U.S. Department of Housing and Urban Development; Scott Turner, in his official capacity as Secretary of Housing and Urban Development; National Archives and Records Administration; Marco Rubio, in his official capacity as Acting Archivist of the United States; National Endowment for the Humanities; and Michael McDonald, in his official capacity as Acting Chair of the National Endowment for the Humanities, by and through their undersigned counsel, hereby respectfully submit their Joint Case Management Conference Statement and Rule 26(f) Report pursuant to the Clerk's February 26, 2025, Notice Setting Case Management Conference (ECF No. 42).

Federal Defendants propose that the Court continue the Case Management Conference until

---

[1] Plaintiffs' Complaint identifies (1) Vince Micone, in his official capacity as Acting Secretary of Labor; (2) Michael Schloss, in his official capacity as Acting Director of Office of Federal Contracts Compliance Programs; (3) William J. Bosanko, in his official capacity as Deputy Archivist of the United States; and (4) Shelly C. Lowe, in her official capacity as Chair of the National Endowment for the Humanities, as named co-defendants. Pursuant to Fed. R. Civ. P. 25(d), (1) Lori Chavez-DeRemer, U.S. Secretary of Labor; (2) Catherine Eschbach, Director of Office of Federal Contracts Compliance Programs; (3) Marco Rubio, Acting Archivist of the United States; and (4) Michael McDonald, Acting Chair of the National Endowment for the Humanities, have been automatically substituted as named defendants.

after the Court has ruled on the Motion for Preliminary Injunction.

**1. Jurisdiction and Service:**

*Plaintiffs:* Plaintiffs allege that this Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States and the United States Constitution. An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory, injunctive, and other relief pursuant to 28 U.S.C. §§ 2201-2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) and (e)(1) because each defendant is an agency of the United States or an officer of the United States sued in their official capacity; Plaintiffs San Francisco AIDS Foundation, GLBT Historical Society, and San Francisco Community Health Center reside in this district; and a substantial part of the events or omissions giving rise to this action occurred and continue to occur in this district where San Francisco AIDS Foundation, GLBT Historical Society, and San Francisco Community Health Center reside.

The Court has personal jurisdiction over all Federal Defendants, who have all been served.

*Federal Defendants:* The jurisdictional issues include the following:

(1) Plaintiffs lack standing with respect to the majority of the provisions of the Executive Orders, which are comprised of numerous terms directing federal agencies to engage in a range of actions. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 626-27 (2020).

(2) In accordance with the Tucker Act, the Court does not have jurisdiction to review Plaintiffs' grant-termination funding claims, because the U.S. Court of Federal Claims has jurisdiction to render judgment on any claim against the United Sates arising from "any express or implied contract with the United States." 28 U.S.C. § 1491(a); and

(3) Plaintiffs' pre-termination claims are not ripe for review, as Plaintiffs essentially seek enforcement of the federal government's "contractual obligation to pay money." *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025).

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT
Case No. 4:25-cv-1824 -JST

**2. Facts:**

*Plaintiffs:* In the days following his inauguration, President Donald J. Trump issued a number of executive orders, including three that are the subject of this lawsuit, namely Executive Order No. 14168 "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," ("Gender Order"), Executive Order No. 14151 "Ending Radical and Wasteful DEI Programs and Preferencing," ("DEI-1 Order") and Executive Order No. 14173 "Ending Illegal Discrimination and Restoring Merit-Based Opportunity" ("DEI-2 Order") (collectively the "Executive Orders").

Plaintiffs contend that these Executive Orders seek to punish and defund Plaintiffs for acknowledging the existence of transgender people, advocating for their rights, and adopting an equitable approach to the provision of their services that recognizes the rich diversity of the United States.

Plaintiffs further contend that the Gender Order in particular expresses and imposes on others a disparaging, demeaning, idiosyncratic, and unscientific viewpoint about transgender people and gender identity; repudiates the existence of transgender people; deems their identities to be "false;" and orders their exclusion from government recognition and protection in numerous aspects of their lives.

Plaintiffs also allege that the DEI-1 Order expresses a viewpoint that "diversity, equity, inclusion, and accessibility," "DEIA," or related programs are "illegal and immoral discrimination programs," and, among other things, directs agencies to terminate all equity-related grants or contracts. The DEI-2 Order lays out specific mechanisms to punish contractors and grantees that embrace principles of diversity, equity, inclusion, and/or accessibility, including mechanisms for the termination of already-appropriated funds to those contractors and grantees and for excluding the same from future contracts and/or grants.

Plaintiffs assert that the Executive Orders together target Plaintiffs and the people they serve for opprobrium and exclusion from services that receive federal financial assistance because of who

they are. Seeking to leverage the federal government's vast reach throughout the economy to control private thought and speech, President Trump has instructed federal agencies to condition federal contracts and grants on private parties' commitments to silencing themselves regarding "diversity, equity, inclusion, and accessibility," or the very existence of transgender people.

The work that all Plaintiffs do is critical to thousands of LGBTQ and non-LGBTQ people across our country. This work documents the Nation's rich and diverse history; provides life-saving health care, housing, and other social services to people from all walks of life in a manner that respects everyone for who they are; builds community; and promotes wellness. To do this, Plaintiffs must be able to serve the people who need them by recognizing their humanity and personhood, and by tailoring services in a manner that acknowledges and addresses the many structural and societal barriers that their patients, clients, and patrons face.

The Executive Orders pose an existential threat to transgender people and the organizations that respect their existence, shield them from harm, provide them with life-saving services and community, and engage in core protected speech advocating for their liberation. The Executive Orders should be declared unconstitutional, and their implementation should be enjoined..

*Federal Defendants:*

The President is permitted to set policy priorities, and to align government funding and enforcement strategies with those policy priorities to the extent permitted by law.  To that end, the President issued three Executive Orders, which, *inter alia*, included provisions that steered agency discretion with respect to federal funding. Specifically, three provisions (together, Funding Provisions) directed all federal agencies to (1) as "allowed by law," terminate "equity-related" grants or contracts (Termination Provision); (2) "as permitted by law, to end the Federal funding of gender ideology," (Funding Gender Ideology (FGI) Provision); and, (3) "ensure grant funds do not promote gender ideology," (Promoting Gender Ideology (PGI) Provision). Another provision directed the Director of the Office of Management and Budget (OMB) to "[e]xcise references to" diversity, equity, inclusion (DEI) and diversity, equity, inclusion, accessibility (DEIA) "principles

. . . from Federal acquisition, contracting, grants, and financial assistance procedures," (Contract Terms Provision).

The Executive Orders also instructed the Executive Branch with respect to one of this administration's enforcement priorities—namely, to enforce federal antidiscrimination laws against unlawful DEI and DEIA programs. To that end, these provisions directed the Attorney General to coordinate with other federal agencies to produce a report recommending a plan of action for deterring DEI programs that constitute "illegal discrimination or preferences," (Reporting Provision), and required agencies to ensure that their grantees/contractors certify that they do not operate any DEI programs that "violate any applicable Federal anti-discrimination laws," (Certification Provision).

**3. Legal Issues:**

*Plaintiffs:* Plaintiffs have identified the following primary disputed issues, which may be legal, factual or both:

(1)     whether the Executive Orders and any agency action seeking to implement the Executive Orders both facially and as applied to Plaintiffs violate the Speech Clause of the First Amendment to the United States Constitution in at least the following ways:

    a. they impermissibly burden and chill Plaintiffs' exercise of constitutionally protected speech, expression, and expressive conduct based on the content and viewpoint of their speech,

    b. they coerce Plaintiffs to adopt, endorse, and comply with the government's own idiosyncratic viewpoint as if it were their own, such that the forced-choice framework imposed by the Executive Orders is to comply with viewpoint-based restrictions or lose federal funding,

    c. they discriminate against those Plaintiffs who refuse to be chilled or coerced to comply with the government's preferred message for engaging in protected speech and expression of their own viewpoint, and

- 6 -

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT
Case No. 4:25-cv-1824 -JST

         d.   they impose an unconstitutional condition on congressional funding by requiring Plaintiffs, as a condition of receiving public grants and contracts, to relinquish their First Amendment rights of free speech by refraining from speaking on a certain subject—a mandate spun from whole cloth that is antithetical to the federal interests and goals of the programs;

(2) whether the Executive Orders and any agency action seeking to implement the Executive Orders both facially and as applied to Plaintiffs violate the Due Process Clause of the Fifth Amendment to the United States Constitution, as applied to Plaintiffs First Amendment speech rights, because they include vague and subjective terms that lend themselves to conflicting interpretations and appear designed to authorize discriminatory and arbitrary enforcement to achieve the maximum chilling effect on disfavored viewpoints;

(3) whether the President, in issuing the Executive Orders and directing agencies to terminate congressionally appropriated grants based on the President's own policy preferences, the Executive Orders attempt to amend, repeal, rescind, or circumvent duly enacted federal statutes or appropriations--mandates that exceed the President's powers under Article II, unconstitutionally infringe upon those powers vested in Congress, and attempt to amend federal legislation while bypassing Article I's Bicameralism and Presentment Clauses. See U.S. CONST. art. I, § 7, cl. 2, 3;

(4) whether the President's Executive Orders violate the constitutional separation of powers and amount to an unconstitutional exercise of executive authority over federal appropriations by directing agencies to take actions contrary to statutory laws and their express purposes dictated by Congress;

(5) whether the Gender Order, on its face and as-applied to Plaintiffs, violates the equal protection guarantee of the Fifth Amendment to the United States Constitution because

         a.   it discriminates against Plaintiffs based on sex and transgender status by depriving them of funding because they serve and advocate for an end to discrimination against transgender people,

      b. it is motivated by animus, expressing a disparaging, demeaning, idiosyncratic, and unscientific viewpoint about transgender people; repudiating the very existence of people who are transgender, deeming them "false"; and ordering their exclusion from government recognition and protection in every aspect of their daily lives, from identification documents to healthcare, housing, and employment, among other elements,

      c. creates a classification based on sex because it creates idiosyncratic and unscientific sex-based definitions for the purpose of exclusion and directs agencies to withhold grants from entities that "promote gender ideology."

(6) the applicability and scope of declaratory and injunctive relief; and

(7) entitlement to costs and attorneys' fees.

*Federal Defendants:*

The legal issues include:

(1) With respect to Plaintiffs' First Amendment claim, for the Funding Provisions, the Supreme Court has long held that when it comes to what the government affirmatively chooses to fund, a "decision not to subsidize the exercise of a fundamental right does not infringe the right." *Rust v. Sullivan*, 500 U.S. 173, 193 (1991) (quoting *Regan v. Tax'n With Representation of Wash.*, 461 U.S. 540, 549 (1983));

(2) Plaintiffs' void-for-vagueness challenge is categorically inapposite. The vagueness doctrine traditionally "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) (plurality). *Cf. FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." (citation omitted)); and

(3) For Plaintiffs' due process challenge, the protections afforded to this narrow set of

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT
Case No. 4:25-cv-1824 -JST

government benefits have not been extended to "'ordinary' or 'routine' government contracts." *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 385 (S.D.N.Y. 2014); *see also Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 10 (1st Cir. 2005) ("We have held with a regularity bordering on the echolalic that a simple breach of contract does not amount to an unconstitutional deprivation of property."); *New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014) ("The Supreme Court has never held that government contracts for goods and services create property interests protected by due process." (citation omitted)).

The parties reserve the right to raise additional factual or legal issues that may arise throughout the course of this action.

**4. Motions:**

Plaintiffs previously filed a motion for preliminary injunction on March 3, 2025 (ECF No. 47). The Court heard the motion on Thursday, May 22, 2025 (ECF No. 78, Minute Order). The motion is presently under advisement.

*Plaintiffs:* There are no other current motions pending before the Court. Depending on facts uncovered during discovery, Plaintiffs anticipate filing motions for summary judgment. Plaintiffs will also seek entry of a stipulated protective order. There may also be further requests for provisional relief and discovery motions.

*Federal Defendants:* In response to the Complaint, Federal Defendants intend to file a Motion to Dismiss. Federal Defendants may file a Motion to Stay Discovery Pending the Court's Preliminary Injunction and Motion To Dismiss Orders.

**5. Amendment of Pleadings:** The Federal Defendants have not yet answered or otherwise responded to the Complaint. The parties stipulated (ECF No. 63) that Federal Defendants deadline to respond to the Complaint is thirty (30) days after the Court's ruling on Plaintiffs' Motion for Preliminary Injunction. To the extent that additional claims and/or defenses may need to be added through future amendment(s) of the pleadings, the parties agree that the deadline to join additional

parties and/or amend the pleadings will be by the deadline proposed in section 17 *infra*, December 1, 2025.

**6. Evidence Preservation:**

*Plaintiffs:* Plaintiffs represent that they have instituted reasonable document preservation procedures to maintain relevant documents, electronic or otherwise, until this dispute is resolved. Plaintiffs certify that they have reviewed the Court's ESI Guidelines.

*Federal Defendants:* The undersigned counsel is coordinating internally regarding the Federal Defendants' steps to maintain relevant documents, electronic or otherwise, until this dispute is resolved. The undersigned counsel certifies that he has reviewed the Court's ESI Guidelines.

**7. Disclosures:**

*Plaintiffs:* Pursuant to Federal Rule of Civil Procedure 26, Plaintiffs propose delaying the initial disclosure obligations until twenty-one (21) days following the ruling on the Motion for Preliminary Injunction, and then subject to entry of a stipulated protective order. The parties should supplement their disclosures as discovery continues as required under Fed. R. Civ. P. 26(e)(1).

*Federal Defendants:* Federal Defendants propose that the Court stay the initial disclosure requirement and revisit it after ruling on the Motion for Preliminary Injunction.

**8. Discovery:**

*Plaintiffs:* As of the time of this filing, no discovery has been taken by the parties. The parties conferred regarding a stipulated e-discovery order during their Rule 26(f) Conference and intend to file a [Proposed] Order for Discovery of Electronically Stored Information.

Plaintiffs do not believe that any changes in the disclosures under Rule 26(a)(1) should be made. Plaintiffs do not believe that discovery should be conducted in phases or otherwise be limited.

Plaintiffs believe that the Federal Rules of Civil Procedure should apply with respect to the limitations and procedures for written discovery, fact depositions, and expert depositions. However,

with respect to interrogatories, plaintiffs propose a limit of 35 interrogatories.

Plaintiffs propose the following discovery plan pursuant to Fed. R. Civ. 26(f)(3):

(A) Plaintiffs are not presently aware of any need for changes to the rules regarding disclosures and, as noted, propose the parties exchange Initial Disclosures Twenty-One (21) days after ruling on the motion for Preliminary Injunction.

(B) Anticipated discovery includes written discovery requests from both sides, as well as depositions of the principal party witnesses and others (including third parties); there does not appear to be any benefit to conducting discovery in phases, and it should be completed by the proposed discovery cut-off date set forth herein.

(C) Plaintiffs propose that the entry of a mutually acceptable stipulated protective order be required and a mutually acceptable ESI order may be required.

(D) Plaintiffs are not presently aware of any issues relating to privilege or trial preparation materials. Plaintiffs propose that the parties not be required to log privileged materials after April 6, 2026 (the "cut-off date.") Information concerning documents or things otherwise protected by the attorney-client privilege, work product immunity, or other privilege or protection ('Privileged Materials") that were created after the cut-off date do not need to be included on any privilege log. In addition, Privileged Materials created by or on behalf of counsel or exchanged with counsel, regardless of their date, do not need to be included on any privilege log.

(E) Plaintiffs are not aware of the need for any limitations or modifications of the discovery rules, other than as set forth above.

(F) Plaintiffs do not presently anticipate the need for any discovery orders, other than as set forth above.

Plaintiffs are agreeable to accept mutual email service of all discovery. The parties have not

yet identified any discovery disputes.

*Federal Defendants:* Federal Defendants propose that the Court stay discovery and revisit discovery after it has ruled on the Motion for Preliminary Injunction.

**9. Class Actions:**

Not applicable.

**10. Related Cases:**

Cases relating to the subject Executive Orders include:

Executive Order No. 14168:

*Washington v. Trump*, Case No. 25-cv-00244-LK (W.D. Wash.); and

*PFLAG, Inc. v. Trump*, Case No. 25-cv-00337-BAH (D. Maryland);

Executive Order No. 14173:

*Chicago Women in Trades v. Trump*, Case No. 25-cv-002005 (N.D. Ill.); and

*San Francisco Unified School Dist. v. Americorps*, Case No. 25-cv-02425-EMC (N.D. Cal.);

Executive Order No. 14151:

*Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*, No. 25-cv-00702-JRR (D. Md.); and

*Pacito v. Trump*, Case No. 25-cv-00255-NJW (W.D. Wash.)

**11. Relief:**

Plaintiffs seek:

a. A declaratory judgment under 28 U.S.C. § 2201(a) that the Executive Orders and their implementing agency actions are facially unlawful and unconstitutional or, alternatively, as applied to Plaintiffs;

b. Preliminary and permanent injunctions enjoining Agency Defendants from implementing and enforcing the Executive Orders against Plaintiffs;

c. Costs and reasonable attorneys' fees as permitted by law; and

d. Such further relief as the Court may deem just and equitable.

**12. Settlement and ADR:**

Counsel for the parties conferred regarding Alternative Dispute Resolution and settlement during their ADR Meet-and-Confer on May 12, 2025. The parties believe that no ADR process is likely to deliver benefits to the parties sufficient to justify the resources devoted to it and request the Court defer making an ADR referral or exempt the case from participating in any ADR process.

**13. Other References:**

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14. Narrowing of Issues:**

No issues are presently known that can be resolved by agreement. There may be issues that can be resolved by motion as referenced in Section 4, above.

**15. Scheduling:**

*Plaintiffs:* Plaintiffs propose the following deadlines in this matter, subject to the Court's convenience:

| Event | Proposed Deadline: |
|---|---|
| Initial Disclosures due | Twenty-One (21) days after ruling on the motion for Preliminary Injunction |
| Case Management Conference | **June 10, 2025** |
| Deadline for joinder of parties/amending the pleadings | **December 1, 2025** |
| Case Management Conference prior to Discovery Cutoff | **March 3, 2026** |
| Fact Discovery Cutoff | **March 17, 2026** |
| Initial expert disclosures and reports due | **February 2, 2026** |
| Rebuttal expert disclosures and reports, if any, due | **March 2, 2026** |
| Expert discovery cutoff | **April 6, 2026** |
| Dispositive motion hearing deadline | **June 4, 2026** |
| Last day for parties to meet and confer regarding Pretrial conference statement and disclosures | **TBD** |

| | |
|---|---|
| Due date for Joint Pretrial Conference Statement | **TBD** |
| Deadline for Proposed Findings of Fact/ Conclusions of Law | **TBD** |
| Final Pretrial Conference, subject to Court's availability | **TBD** |
| Commencement of Bench Trial, subject to Court's availability | **TBD** |

*Federal Defendants:* Federal Defendants propose that the Court defer case scheduling until after its ruling on the Motion for a Preliminary Injunction.

**16. Trial:**

*Plaintiffs:* Although Plaintiffs anticipate a final resolution will be determined by summary judgment, if necessary any Bench Trial should require 10-14 court days.

*Federal Defendants:* Federal Defendants propose that the Court defer consideration of the potential trial setting after its ruling on the Motion for a Preliminary Injunction.

**17. Disclosure of Non-Party Interested Persons:**

*Plaintiffs:* Plaintiffs have each filed the Certification of Interested Entities or Persons as required by Civil Local Rule 3-15.

*Federal Defendants:* Civil Local Rule 3-15 does not apply to governmental parties.

**18. Professional Conduct:**

The attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19. Other Matters:**

None known to the parties at this time.

/

/

/

/

/

- 14 -

JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT
Case No. 4:25-cv-1824 -JST

DATED: June 3, 2025.                    Respectfully submitted,

*/s/ Kenneth D. Upton, Jr.*
KENNETH D. UPTON, JR*
*kupton@lambdalegal.org*
CAMILLA B. TAYLOR*
*ctaylor@lambdalegal.org*
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
3656 North Halsted Street
Chicago, Illinois 60613-5974
Telephone: (312) 663-4413

JENNIFER C. PIZER (SBN 152327)
*jpizer@lambdalegal.org*
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
800 South Figueroa Street, Suite 1260
Los Angeles, California 90017-2521
Telephone: (213) 382-7600

JOSE ABRIGO*
*jabrigo@lambdalegal.org*
OMAR GONZALEZ-PAGAN*
*ogonzalez-pagan@lambdalegal.org*
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005-3919
Telephone: (212) 809-8585

KAREN L. LOEWY*
*kloewy@lambdalegal.org*
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
815 16th Street NW, Suite 4140
Washington, DC 20006-4101
Telephone: (202) 804-6245

PELECANOS*
*pelecanos@lambdalegal.org*
Boulder County, Colorado
Telephone: (213) 351-6051
c/o Jennifer C. Pizer, local counsel
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
800 S. Figueroa St., Ste 1260
Los Angeles, California 90017-2521

*Counsel for Plaintiffs*

*/s/ Christopher F. Jeu*

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

Kenneth W. Brakebill (CABN 196696)
Acting Chief, Civil Division
CHRISTOPHER F. JEU (CABN 247865)
Assistant United States Attorney
60 South Market Street, Suite 1200
San Jose, California 95113
Telephone: (408) 535-5082
FAX: (408) 535-5066
Christopher.Jeu@usdoj.gov

PARDIS GHEIBI (D.C. Bar No. 90004767)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 305-3246
Pardis.Gheibi@usdoj.gov

*Attorneys for Federal Defendants*

## **ATTESTATION**

In compliance with Civil L.R. 5-1(i)(3). I attest that I have obtained concurrence in the filing of this document from each of the other signatories.

Dated: June 3, 2025.         By: */s/ Kenneth D. Upton, Jr.*

KENNETH D. UPTON, JR.
*Counsel for Plaintiffs*